## CITY OF MEMPHIS v. CUMBERLAND TELE- PHONE AND TELEGRAPH COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TENNESSEE.

No. 42. Argued November 8, 9, 1910.—Decided December 12, 1910.

The right of the Circuit Court to take jurisdiction of a case as one arising under the Constitution and laws of the United States must distinctly appear in the allegations of the bill; but this court may take jurisdiction of direct appeal from the Circuit Court under § 5 of the Court of Appeals Act if it properly appears that a right under the Constitution and laws of the United States was duly claimed during the case. *Loeb* v. *Columbia Township*, 179 U. S. 472.

While the opinion of the Circuit Court may not be examined to ascertain what should, under proper practice, appear in the pleadings or bill of exceptions, it may be looked to, when annexed and forming part of the record, to ascertain whether either party claimed, and was denied, a Federal right.

Municipal legislation passed without authority of the State does not lay the foundation of Federal jurisdiction; and statements in the bill to the effect that the ordinances complained of were unauthorized and illegal will be held to refer to the state, rather than to the Federal, constitution, in the absence of distinct references to the latter.

*Quære*, whether a bill within the jurisdiction of the Circuit Court can be construed as charging that the action of a municipality was without authority from the State and also that such action denied plaintiff his constitutional rights under the Fourteenth Amendment.

Where diverse citizenship exists and the bill alleges, and the Circuit

Court holds, that the defendant municipality had no authority to pass the ordinance complained of, the case is not one arising under the Constitution and laws of the United States; and, although the judge may have declared in his opinion that the ordinance violated complainant's Federal rights, this court has not jurisdiction on a direct appeal under § 5 of the Court of Appeals Act.

THE facts, which involve the jurisdiction of this court of a direct appeal from the Circuit Court of the United States, are stated in the opinion.

*Mr. Charles M. Bryan*, with whom *Mr. Marion G. Evans* was on the brief, for appellant.

*Mr. William L. Granbery*, with whom *Mr. Luke E. Wright* and *Mr. Eldridge E. Wright* were on the brief, for appellee.

MR. JUSTICE DAY delivered the opinion of the court.

We are met at the threshold of this case with a challenge of the appellate jurisdiction of this court. The case was begun in the Circuit Court of the United States for the Western District of Tennessee by a bill filed by the Cumberland Telephone and Telegraph Company against the city of Memphis, seeking to enjoin the enforcement of the provisions of an ordinance of that city passed September 24, 1907, regulating charges by telephone companies in the city.

The bill averred that the complainant was a corporation organized and existing under the laws of the State of Kentucky, and that the respondent, the city of Memphis, was a municipal corporation created and existing under the laws of Tennessee. The jurisdiction of the Circuit Court, therefore, might rest upon diverse citizenship. Concerning the ordinance regulating the charges of telephone rates, the enforcement of which it was the object of the suit to enjoin, it was averred to be null and

void, for the reason that the city of Memphis was incorporated under a legislative act of the State of Tennessee, with certain powers and authority which nowhere included, either by express terms or necessary implication, a power to fix and regulate telephone charges, and that the attempt to do so was an abuse of power and an attempt to exercise a power which the city wholly lacked.

The bill also charged that the ordinance was null and void because it was unjust, inequitable and unreasonable, because the tariff rates fixed were so low that complainant could not operate its exchange without actual loss of money; that said ordinance was in truth and effect confiscatory; and that it totally destroyed the value of the complainant's plant in the city of Memphis for profitable use as a telephone exchange. The prayer of the bill was for an injunction against the enforcement of the ordinance in question.

A preliminary injunction was granted; the judge holding the Circuit Court at that time delivering an opinion announcing the conclusion that the ordinance in question was passed by the city without legislative authority, the court saying that was all which was necessary to decide at that time, but beyond that he thought the city estopped by a certain contract which was set up in the bill from adopting the ordinance in question, and a preliminary injunction was granted.

The answer took issue upon the allegations of the bill, a considerable amount of testimony was taken as to the reasonableness of the rates fixed in the ordinance, and the judge who heard the case upon the merits reached the conclusion that the rates fixed in the ordinance were confiscatory, and said: "That result seems to us to be destructive of the complainant's rights under the Constitution of the United States."

Adverting to the opinion delivered upon the granting of the temporary injunction, the court rendering the final

decree stated that the former decision was based upon a want of authority in the city to pass the ordinance and the estoppel of the contract set up in the bill, adding: "We are not to be considered as dissenting from either of these views. We have not had time to examine either proposition, or inclination to do so, because we are entirely content to decide the case upon final hearing upon the one ground herein discussed."

As was said by Mr. Justice Moody, speaking for the court in *Macfadden* v. *United States*, 213 U. S. 288, a right to review the judgments of the Circuit Courts of Appeals and of the Circuit and District Courts of the United States rests upon different grounds, and that unless this fact is borne in mind confusion is liable to result. The appellate jurisdiction from the Circuit Court of Appeals to this court, as Mr. Justice Moody pointed out, is determined by the sources of jurisdiction of the trial court, and depends upon the finality of the judgment of the Circuit Court of Appeals, as under § 6 of the Court of Appeals Act in all other cases there is a right of review in this court if the amount in controversy exceeds one thousand dollars. The right to come directly to this court by appeal or writ of error from the District or Circuit Courts of the United States arises under § 5 of the Court of Appeals Act, and so far as the case now under consideration is concerned, depends upon the case being within the class of cases mentioned in that section, namely, "in any case in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States."

The right to take jurisdiction of a case in the Circuit Court of the United States arising under the Constitution or laws of the United States must appear in the allegations of the bill or petition with such distinct averments as to show that it is such. Under § 5 of the Court of Appeals Act the right to come to this court by direct

appeal is given in any case in which it is "claimed" that
a constitution or law of a State is in contravention of the
Constitution of the United States. It is thus apparent
that the claim to give a right of appeal under this section
need not necessarily be in the pleading of the party in-
voking the jurisdiction of the court. It is sufficient if
such right is duly claimed in the case. The statute is
silent as to how this claim shall be made. The subject
was under consideration in *Loeb* v. *Columbia Township
Trustees*, 179 U. S. 472, 485, and the distinctions between
the requirements of jurisdiction in an appeal to the Cir-
cuit Court of Appeals and an appeal direct to this court
were pointed out. In that case it was held that where the
defendant brought the constitutional question into the
record by demurrer, and the opinion of the Circuit Court
showed that it had considered and determined that ques-
tion, the proper basis for jurisdiction by direct appeal
to this court was shown.

In saying that the opinion of the Circuit Court might
be looked to when annexed and transmitted as part of the
record, to ascertain whether either party claimed that
a state statute was in contravention of the Constitution
of the United States, this court, in the *Loeb case*, added:
"By this however we must not be understood as saying
that the opinion below may be examined in order to as-
certain that which under proper practice should be made
to appear in a bill of exceptions or by an agreed statement
of facts or by the pleadings."

In *Lampasas* v. *Bell*, 180 U. S. 276, a suit was brought
against the city of Lampasas to recover upon certain
bonds, and the jurisdiction rested upon diverse citizen-
ship. The defendant sought to introduce a constitutional
question into the record in the contention set up in the
answer, that the residents of certain territory incorpo-
rated into the city had not been given an opportunity
to be heard as to whether they should be included in and

be subject to taxation in the proposed incorporation. It was therefore contended that the bonds were void, and an attempt to levy and collect taxes to pay them was in violation of § 1 of the Fourteenth Amendment of the Constitution of the United States. This court dismissed the writ of error, saying:

"This court has only jurisdiction by appeal or writ of error directly from the Circuit Court in certain cases, one of which is when 'the constitution or law of a State is claimed to be in contravention of the Constitution of the United States.' Sec. 5 of the Judiciary Act of March 3, 1891, c. 517, 26 Stat. 826, 828. But the claim must be real and substantial. A mere claim in words is not enough. We said by the Chief Justice in *Western Union Telegraph Co.* v. *Ann Arbor Railroad Co.*, 178 U. S. 239: 'When a suit does not really and substantially involve a dispute or controversy as to the effect or construction of the Constitution or laws of the United States, upon the determination of which the result depends, it is not a suit arising under the Constitution or laws.' And it must appear on the record by a statement, in legal and logical form, such as is required in good pleading, that the suit is one which does really and substantially involve a dispute or controversy as to a right which depends on the construction of the Constitution or some law or treaty of the United States before jurisdiction can be maintained on this ground. *Gold Washing & Water Co.* v. *Keyes*, 96 U. S. 199; *Blackburn* v. *Portland Gold Mining Co.*, 175 U. S. 571."

In this case a perusal of the bill, answer and testimony in the case makes it apparent that if brought into the record at all, the alleged claim of a violation of the Federal Constitution by a state law must be found in the bill itself. It appears from an examination of the bill that it is distinctly charged therein that the ordinance was passed without authority of the State, and its attempted passage

it is alleged was an abuse of power by the city. There is no reference in the bill to any provision of the Federal Constitution. If any can be said to be violated, it must be the Fourteenth Amendment. It is hardly necessary to say that that Amendment is aimed at state action, in the provision that no State shall deprive any person of life, liberty or property without due process of law. The bill, therefore, so far from charging a violation of the Fourteenth Amendment by an authorized action of the State, distinctly and in terms avers that the ordinance was passed without state authority. That such municipal legislation does not lay the foundation of Federal jurisdiction has been repeatedly held in this court. *Hamilton Gas Light Company* v. *Hamilton*, 146 U. S. 258, in which many of the previous cases in this court are cited. In that case Mr. Justice Harlan, speaking for the court, said of an ordinance passed without legislative authority: "A suit to prevent the enforcement of such an ordinance would not, therefore, be one arising under the Constitution of the United States."

In *Barney* v. *City of New York*, 193 U. S. 430, the bill invoked the jurisdiction of the Circuit Court of the United States upon the ground that the plaintiff was deprived of his property without due process of law; other allegations of the bill showed that the matters complained of were not only not authorized, but were forbidden by the legislation of the State, hence the action did not invoke the protection of the Fourteenth Amendment because of action by the State of New York, and therefore it was held the bill was properly dismissed for want of jurisdiction. In that case some of the previous cases in this court, to the same effect, are reviewed by Mr. Chief Justice Fuller, who delivered the opinion of the court.

A question closely analogous to the one at bar came before the Court of Appeals of the Sixth Circuit, Judge Lurton delivering the opinion of the court. *City of Louisville*

*v. Cumberland Telephone & Telegraph Co.,* 155 Fed. Rep. 725. In that case the jurisdiction of the Circuit Court was invoked on the ground that the ordinance of the city of Louisville regulating rates was in violation of a contract between the complainant and the city; also on the ground that the rates were unreasonable, unjust and confiscatory, depriving the complainant of property without due process of law, in violation of the Fourteenth Amendment of the Constitution. In that case the bill was dismissed upon the ground that the allegations of the complaint showed that the case was not one arising under the Constitution and laws of the United States. This was held to be so because of other statements of the bill, which it was held negatived state action, which alone could lay the foundation of jurisdiction, in that it averred that no power to regulate the rates charged by the complainant had been granted by the State of Kentucky to the municipality which had undertaken to pass the regulating ordinance, and that the attempt to pass such ordinance was an unwarranted and unfounded assumption of power upon the part of the city.

The claim that the jurisdiction should be sustained because the common council of the city of Louisville had assumed to act under authority of the legislature of the Commonwealth of Kentucky, which was averred in the bill, was answered by the court saying that the existence of such regulating power was distinctly negatived by the allegation of the bill that the city had acted in the premises wholly without authority.

So, in the present case, the statements of the bill are clear and distinct that the passage of the ordinance was without power, and a usurpation on the part of the city; and the allegations of the bill as to the confiscatory character of the ordinance can, consistently with the other averments of the bill, be referred only to the state constitution, which, as well as the Federal Constitution, in-

hibits attempts to take property without due process of law. *Harbinson* v. *Knoxville Iron Co.*, 103 Tennessee, 421.

It is suggested that the bill, when properly construed, may have a two-fold aspect, one of which charges that the city acted without authority of law and the other that, conceding the city to act with authority, the rates fixed were confiscatory, in violation of the Federal Constitution. Assuming that a bill might be framed in this manner, it is sufficient to say of the present bill that it is not one of that character. There is nothing in it qualifying the allegation as to the action of the city without authority of the State, and as we have said, the allegations as to the confiscatory character of the ordinance are to be referred, as they can be consistently with the other allegations of the bill, to the state constitution, which would be violated if such allegations were true. This construction harmonizes the bill and does violence to none of its averments.

The case then is this: The first and only reference to the Federal Constitution is in the final opinion of the Circuit Judge who heard the case upon the merits, in the part of the opinion above quoted, to the effect that the rates fixed are in violation of the complainant's rights under the Federal Constitution. This observation was doubtless made by the learned judge as the equivalent of saying that the rates were confiscatory, and therefore unlawful; but, whether so or not, so far as it makes the Fourteenth Amendment a ground of decision, it is inconsistent with the position taken in the bill, and as there is no basis for a claim of denial of rights under that Amendment in the case, it cannot be made the ground of direct appeal to this court under the fifth section of the Court of Appeals Act.

We are of opinion that this case must be dismissed for want of jurisdiction in this court, and

*It is so ordered*

MR. JUSTICE WHITE, with whom concur MR. JUSTICE McKENNA and MR. JUSTICE HUGHES, dissenting.

As I cannot concur in the judgment of dismissal, in view of what seems to me to be the importance of the subject, the reasons for my dissent are expressed.

Let me restate the case. In September, 1907, the city of Memphis passed an ordinance fixing maximum telephone rates. The telephone company filed its bill to enjoin the enforcement of the ordinance. Diversity of citizenship was alleged. The relief prayed was based upon substantially the following grounds: *a*, that as the legislature of Tennessee had conferred no power upon the city of Memphis to fix rates, the city was wholly lacking in authority to pass the ordinance, and the same was therefore void; *b*, that the ordinance was void "because it is unjust, inequitable and unreasonable, in that it fixes the maximum tariff or rate of charges beyond which your orator is forbidden to go, under severe penalties, which is so low that your orator could not operate its exchange without actual loss of money to it; and, indeed, is in truth and effect confiscatory, in that it totally destroys the value of your orator's plant in the city of Memphis for profitable use as a telephone exchange." The paragraph of the bill containing the foregoing concluded as follows: "Your orator further states that said ordinance was passed by the legislative council of said city, not only without making any investigation whatever, but in ignorance of what was a reasonable rate (assuming that it had the power to deal with the subject at all, which is denied), and without the least regard to the vested rights of your orator, or to equity and justice, and it is, for the reasons set forth in this paragraph, null and void;" *c*, that the ordinance was moreover void because it was unequal and discriminatory in consequence of a proviso to the first section exempting from its operation telephone com-

panies whose rates were fixed by contract with the city of Memphis.

By its answer the city asserted the power to pass the ordinance and traversed the averments of the bill as to confiscation and discrimination. A final decree was awarded adjudging the ordinance to be null and void and permanently enjoining its enforcement. The court, premising by "assuming that the city of Memphis, notwithstanding any contract it may have with the complainant, has the right and power to fix the rates which the latter may charge its customers in Memphis," came to consider the constitutional limitations to which the exertion of that power was subjected. Dealing with that subject, it was pointed out that the power to fix rates could not be so unreasonably exerted as to amount to confiscation, and, examining the proof as to the operation and effect of the rates established by the ordinance, it was found that they were of that character. The court said:

"The holders of stock in the complainant company are entitled to a fair return upon their investment if the company can earn it, but the testimony leaves no doubt that the rates prescribed by the ordinance would leave practically nothing to the stockholders.

\*       \*       \*       \*       \*       \*       \*       \*

"If to large taxation and other enforced expenditures already properly exacted, the city (now that complainant's plant is fully installed) can add the burden of rates fixed arbitrarily that would so diminish earnings (though not expenses) as to leave no dividends whatever for stockholders, manifestly the money invested by them would be used for the benefit alone of the people of Memphis and not at all for the profit of those who made the investment under inducements offered by the city.

\*       \*       \*       \*       \*       \*       \*       \*

"That result seems to us to be destructive of complainant's rights under the Constitution of the United States.

"In Judge Clark's opinion upon the motion for the temporary injunction it is clearly indicated that that learned and lamented judge thought that the city had no power or authority to enact the ordinance for two reasons, viz: 1st, because the State had never given the city such authority, and, 2d, because the city had a contract with the complainant which could not be thus impaired.

"We are not to be considered as dissenting from either of these views. We have not had time to examine either proposition, nor inclination to do so, because we are entirely content to decide the case on final hearing upon the one ground herein discussed."

The city appealed directly to this court upon the ground that the case is one where a constitutional right was claimed below and hence is susceptible of being directly reviewed here under § 5 of the Judiciary Act of 1891. On the hearing at bar it was suggested on behalf of the telephone company that the record did not disclose that the protection of the Constitution of the United States was claimed by the telephone company, and therefore the bill should be dismissed, and the court gives effect to that suggestion by its decree of dismissal.

Before ascertaining whether the record establishes that there is a claim of Federal right authorizing a direct review, it is necessary to fix definitely what constitutes the record. The contention on this subject involves the inquiry whether the opinion of the court below is part of the record, and if it is a part of the record and it be conceded that a question of Federal right was decided below, does that fact establish the existence of a claim of constitutional right justifying the direct review within the meaning of the act of 1891? To my mind an affirmative answer to both these propositions is required if previous decisions of this court be now applied.

In *Loeb* v. *Columbia Township Trustees*, 179 U. S 472, the case was this: Loeb, a citizen of Indiana, sued the

trustees of Columbia Township in Hamilton County, Ohio, in a Circuit Court of the United States, to recover the amount of certain bonds issued by the township. The defendant filed a general demurrer. This demurrer was sustained, and the plaintiff electing not to plead further, judgment was rendered for the defendant. The court, in the opinion by it delivered, declared that it had sustained the demurrer because it had concluded, as claimed by the defendant on the argument of the demurrer, that the law under which the bonds were issued was repugnant to the Constitution of the United States. A writ of error having been prosecuted directly from this court, the right to prosecute the same was challenged, and came to be disposed of when the case was considered. The court said (p. 477): "The petition shows that the parties are citizens of different States. It states no other ground of Federal jurisdiction. If nothing more appeared bearing upon the question of jurisdiction, then it would be held that this court was without authority to review the judgment of the Circuit Court." The court then proceeded to consider whether it was "sufficiently informed by the record that the defendant township, under its general demurrer, 'claimed' in the Circuit Court that the statute of Ohio by the authority of which the bonds were issued was in contravention of the Constitution of the United States?" It was held (p. 481) that although the demurrer was general, and did not make reference to any claim of the protection of the Constitution of the United States, "it was certainly competent for the township to claim at the hearing of the demurrer" that the state enactment under which the bonds were issued "upon its face was repugnant to the Constitution of the United States, and therefore void." The court, after pointing out that there was nothing in the record outside of the opinion of the court showing that a claim of Federal right had been made and decided, was brought to consider whether it had a right to look

at and was controlled by the result of the opinion showing that the Federal right had been claimed. The previous decisions of this court relating to that subject were then fully and carefully reviewed. The difficulty which had existed in ascertaining whether a Federal question had been specially set up or claimed on writs of error to state courts during the prevalence of the conception that the opinion of the state court formed no part of the record and could not be looked at, was adverted to, the rule adopted by this court to correct that situation and by which it had become established that the opinion of the state court could be referred to in order to ascertain whether a Federal right had been specially set up and claimed was stated, and it was observed (p. 483):

"The rule of our court referred to does not apply alone to cases brought here from the highest court of a State. It applies, in terms, to all cases brought to this court by writ of error or appeal. What, therefore, was said in the above cases as to the object and effect of the rule applies to records from a Circuit Court of the United States."

Applying the rule settled in the *Loeb case,* and hence treating the opinion in this case as a part of the record, it is not subject to question that it affirmatively shows that the decree rendered in favor of the telephone company, adjudging the ordinance to be null and void, was placed upon the express conclusion that the ordinance was repugnant to the Constitution of the United States. Is this then sufficient to establish for the purposes of the jurisdiction of this court that a Federal question was claimed? This is to be determined, as held in the *Loeb case,* by the principles applied by this court in testing its jurisdiction to review the judgments or decrees of a state court under § 709 of the Revised Statutes. That is to say, the fact that the court below expressly decided a Federal question must be given the same weight as would be given the express determination by a state court in its opinion of a

Federal question for the purpose of ascertaining whether
a Federal right was specially set up and claimed in the
state court. The rule upon this latter subject was thus
stated in *Missouri, Kansas &c. Ry. Co.* v. *Elliott*, 184 U. S.
531, 533, as follows:

"The general rule undoubtedly is that those Federal
questions which are required to be specially set up and
claimed must be so distinctly asserted below as to place it
beyond question that the party bringing the case here from
the state court intended to and did assert such a Federal
right in the state court. But it is equally true that even
although the allegations of Federal right made in the state
court were so general and ambiguous in their character
that they would not in and of themselves necessitate the
conclusion that a right of a Federal nature was brought to
the attention of the state court, yet if the state court in
deciding the case has actually considered and determined
a Federal question, although arising on ambiguous aver-
ments, then, a Federal controversy having been actually
decided, the right of this court to review obtains. *Oxley
Stave Co.* v. *Butler*, 166 U. S. 648, 660. All that is essential
is that the Federal questions must be presented in the
state court in such a manner as to bring them to the atten-
tion of that tribunal. *Chicago, B. & Q. R. R. Co.* v. *Chicago*,
166 U. S. 226. And of course, where it is shown by the
record that the state court considered and decided the
Federal question, the purpose of the statute is subserved.
And so controlling as to the existence of the Federal ques-
tion is the fact that it was actually considered and decided
by the state court, that it has been held, although the
general rule is that the raising of a Federal question in a
petition for rehearing in the highest court of the State is
too late, yet when a question is thus raised, and it is actu-
ally considered and decided by the state court the right to
review exists. *Mallett* v. *North Carolina*, 181 U. S. 589,
592."

And the *Elliott case* has been repeatedly approvingly referred to and the doctrine which it announced expressly reiterated. *Burt* v. *Smith*, 203 U. S. 129, 134; *Smithsonian Institution* v. *St. John*, 214 U. S. 19, 28, and cases cited.

Consistently with these rulings I am unable to conclude that the case made upon the record does not affirmatively establish a claim of constitutional right authorizing the direct review of the action of the court below in deciding a question of that character.

Even at the risk of repetition let me briefly consider the grounds by which it is insisted that this case is not controlled by the authorities above referred to. They may be thus resumed: First, because the bill, it is insisted, did not complain of any action by the State of Tennessee against the rights of complainant, but simply alleged that the city of Memphis had, without authority, attempted to destroy the complainant's rights, thus, it is urged, excluding power in the court to decide that a violation of the Constitution of the United States had been brought about. Second, because even if the complainant did not in express terms exclude all claim of Federal right, nevertheless there was no right in the court to decide a constitutional question, since, taking the complaint as a whole, it clearly appears that its purpose was to assert only rights under the laws of the State of Tennessee, and to exclusively invoke protection of the state constitution. Aside from the abnormal limitation on the judicial function which must arise from holding that without the consent of a litigant a judge, in a case over which he has jurisdiction, may not apply and enforce the Constitution if he deems the facts justify or require him to do so, the propositions, it seems to me, misconceive the averments of the bill. I say this, since they disregard the fact that in substance, while denying the want of power to pass the ordinance, the bill moreover proceeded upon the alternative that if there was power the ordinance was void because of the confiscatory char-

acter of the rates fixed. In any event, in view of the fact
that the court below expressly considered and decided the
constitutional question, the case is brought directly within
the statement in the *Elliott case,* which I again quote, that
(184 U. S. 534) "It is equally true that even although the
allegations of Federal right made in the state court were so
general and ambiguous in their character that they would
not in and of themselves necessitate the conclusion that a
right of a Federal nature was brought to the attention of
the state court, yet if the state court, in deciding the case,
has actually considered and determined a Federal question,
although arising on ambiguous averments, then, a Federal
controversy having been actually decided, the right of this
court to review obtains." Passing, however, further con-
sideration of the correctness of these propositions as ap-
plied to the case made by the record and conceding them
only for sake of argument to be sound, they are irrelevant
to the question of dismissal, since they address themselves
to the merits of the cause. In other words, if the proposi-
tions be accepted as sound, they only demonstrate that
error was committed by the court below in undertaking
to decide a question of constitutional right. But error in
this particular, if found to exist, requires a correction of
the wrong done, that is, a reversal, and not in substance
the upholding of the wrong committed by refusing to re-
view. If it be true, as announced in the previous decisions
of this court, that the requirement of the statute as to the
existence of a claim of Federal right for the purpose of re-
view is subserved where the court below has expressly de-
cided the question of Federal right, it must also be true
that in such a case the duty exists to review and correct
the error committed by the court below, whether such
error arose from a mistake committed by the court in
undertaking to decide a Federal question or from a mis-
take committed in deciding the question which was ex-
pressly passed upon. In other words, where the court

below has expressly decided a question of Federal right and made it the basis of its decree, such decision, for the purpose of review of the merits, in the very nature of things, engenders a conclusive presumption as to the making below of a claim of Federal right. The necessity of this rule cannot be more clearly demonstrated than by the case on this record, as it persuasively appears that the telephone company since the decree below has continuously claimed and enjoyed the right to be relieved from the charges fixed in the ordinance of the city of Memphis, a right possessed as the result of accepting the benefits of the decree and the relief awarded by the injunction therein issued. That is to say, it being certain that the telephone company has up to this very moment claimed the rights awarded to it by the decree, it in my opinion ought not now to be allowed to successfully assert that it made no claim to the constitutional right upon the existence of which alone the decree went in its favor. To claim the benefits of the decree amounts necessarily to claiming the existence of the constitutional right upon which alone the decree was based.

The misconception which underlies the theory upon which the judgment of dismissal now rendered is said to be sustained seems to me to be destructive of the power to directly review a decision passing on a claim of constitutional right for which the statute expressly provides. I say this because, in my opinion, the propositions relied on in reason come to this, that the authority which is conferred upon this court to directly review the actions of trial courts in deciding constitutional questions will not be exerted wherever it is found that a trial court has erroneously undertaken to decide such a question. That is to say, that the right to directly review only authorizes the correction of the lesser wrong resulting from having decided a Federal question mistakenly, and does not embrace the greater of having expressly decided a constitu-

tional question when there was no power to do so. The
duty to review by direct appeal provided by the act of
1891 to be made efficacious in the very nature of things
must embrace, not only the case where the court has
erroneously decided a constitutional question, but also
must extend to the case where a court has undertaken to
expressly decide a constitutional question which it had no
right to pass upon.

Considered from another point of view, the confusion
which is involved in the propositions upon which the de-
cree of dismissal must rest, if I correctly understand them,
is equally demonstrable. As I have said, the denial of
authority to review by direct appeal the action of the trial
court in expressly deciding a constitutional question and
awarding rights to the complainants solely upon the
theory that they were guaranteed by the Constitution of
the United States can only rest upon the assumption that
although the court had general jurisdiction of the cause,
it had not power, under the circumstances, to decide the
constitutional questions which it did decide. But if this
premise be true, then there is presented by the direct ap-
peal a question which in its essence is embraced within the
power which the statute confers to review by direct appeal
decisions involving the jurisdiction of trial courts. The
distribution of appellate jurisdiction which the act of
1891 effected was stated, and the apparent conflict be-
tween some of the adjudged cases on that subject was
cleared up in *Macfadden* v. *United States,* 213 U. S. 288.
It was reindubitably established that where the jurisdic-
tion of a trial court was invoked on the ground of diversity
of citizenship, and during the trial a question of constitu-
tional or Federal right arose or emerged and was decided,
the parties were put to the election of determining whether
they would prosecute error from or appeal to the proper
Circuit Court of Appeals or pursue the same course di-
rectly to or from this court. If the former course was

. adopted it was declared the right to come directly to this court was waived and the judgment or decree of the Circuit Court of Appeals on the constitutional question would be final.  As the result of the ruling now made it must follow that the right of election under the circumstances here disclosed would be difficult, if not impossible of exercise, since if the election were made to bring the case directly to this court the right to review might be lost upon the theory that the lower court wrongfully undertook to decide the constitutional question which it expressly passed upon.  If on the other hand the party elected to seek a review in the Circuit Court of Appeals, and the conclusion of that court was that the trial court not only had power to decide the Federal question which it had passed upon, but had rightfully decided it, the right to review in this court would be lost.

Let me come, then, to the question of authority; that is, the cases relied upon to sustain the decree of dismissal. As it is given me to understand them, none of them sustain the proposition in support of which they are cited. In view of the statement which I have previously made as to the ruling in the *Loeb case* and the matter in that case decided, it is unnecessary to extendedly notice a reference to a general expression found in the opinion in that case as to the duty of bringing into a record, by way of a formal bill of exceptions, agreed facts, etc., since the expressions relied upon cannot be given the effect now attributed to them without virtually holding that the *Loeb case* overruled itself.  This is also true of certain general expressions found in the opinion in *Lampasas* v. *Bell*, 180 U. S. 276, decided at the same term as the *Loeb case*, and which directly affirmed the ruling there made.  Of course nothing I have said, in the slightest degree, is intended to controvert the elementary doctrine that where the existence of a Federal question is essential to confer jurisdiction upon a trial court over a cause,

the jurisdictional facts must be clearly and unambiguously alleged and not be left to surmise or conjecture. And this is all, I submit, that can rightfully be said to have been decided in *Hamilton Gas Light Company* v. *Hamilton*, 146 U. S. 258; *Barney* v. *The City of New York*, 193 U. S. 430; *City of Louisville* v. *Cumberland Telephone & Telegraph Co.*, 155 Fed. Rep. 725. But that doctrine has no application here, since the jurisdiction of the court below existed, as diversity of citizenship was alleged. This being true, it is apparent that the cases cited can only be made here applicable by failing to distinguish between the test for determining whether sufficient foundation has been laid to justify the bringing of the powers of a trial court into play and the duty of an appellate tribunal to review the action of the trial court had in a case within its jurisdiction and authority. After patient research I am of the opinion that it is accurate to say that no case can be found in the books holding that where a trial court has expressly considered and passed upon a question of constitutional rights and awarded affirmative relief to a party before it, upon the theory that such right was involved in the cause which was within its jurisdiction, that the right to review by this court has been denied because there was no claim of right under the Constitution, since the court in passing upon the case before it erroneously based its conclusion upon the mistaken conception that stated propositions of constitutional law were claimed to be applicable.

I am authorized to say that Mr. Justice McKenna and Mr. Justice Hughes join in this dissent.