### CITY OF LOUISVILLE et al. v. LOUISVILLE RY. CO.

#### No. 5570.

Circuit Court of Appeals, Sixth Circuit.
March 25, 1930.

of Louisville, and the general council passed an ordinance granting a new franchise fixing a maximum fare of 7 cents, and providing for periodic adjustment of fares, varying inversely with the return upon the common capital stock of the company. On September 2, 1926, the franchise was further modified by enactment of another ordinance, fixing the fare at seven cents for a period of two years, providing for general valuation of the properties of the company and for subsequent determinations by the general council of the city, from time to time, of rates of fare at such figures as would yield a just and reasonable return upon the value of the railway property used and useful in the service of transportation.

The company continued to operate under the 1926 ordinance for approximately three years, while the valuation of its property was carried to completion. By ordinance adopted June 14, 1929, such valuation was fixed at $18,000,000, 6 per cent. declared a fair return, and 7 cents fixed as the fare necessary to yield this return. Thereupon the present action was begun, and, upon hearing of motion for interlocutory injunction, the District Court overruled a motion to dismiss for lack of federal jurisdiction, fixed the valuation of the property at $20,000,000 and a fair return at 8 per cent., and determined that a 10-cent fare was necessary to yield such return. As already stated, the city appeals only upon the question of jurisdiction.

Briefly stated, the contention of the appellant is that the power of rate regulation has never been delegated by the commonwealth to the general council of the city; that the exercise by the city of the power of valuation and rate determination can therefore be justified only upon the ground that such power was created or conferred by the franchise ordinance contract; and that the alleged confiscatory rates were therefore not the result of *state action*, but solely of action by the municipality in a proprietary capacity, which would not create federal jurisdiction under the Fourteenth Amendment. City of Memphis v. Cumberland Tel. & Tel. Co., 218 U. S. 624, 31 S. Ct. 115, 54 L. Ed. 1185; Hamilton Gas Light Co. v. City of Hamilton, 146 U. S. 258, 13 S. Ct. 90, 36 L. Ed. 963; City of Louisville v. Cumberland Tel. & Tel. Co., 155 F. 725, 12 Ann. Cas. 500 (C. C. A. 6).

It must be conceded that the power to control rates of public utilities rests primarily and exclusively with the General Assembly, unless delegated in express terms to a spe-

Wm. Marshall Bullitt, of Louisville, Ky. (Wm. T. Baskett, of Louisville, Ky., on the brief), for appellants.

Charles W. Milner, of Louisville, Ky. (H. T. Newcomb, of New York City, and Alfred Selligman and Humphrey, Crawford & Middleton, all of Louisville, Ky., on the brief) for appellee.

Before DENISON and HICKENLOOPER, Circuit Judges, and TUTTLE, District Judge.

HICKENLOOPER, Circuit Judge.

The Louisville Railway Company filed its bill in the District Court seeking an injunction against the enforcement of what is claimed to be a confiscatory rate of fare fixed by the general council of the city of Louisville. The only question presented by the present appeal is that of the jurisdiction of the federal courts as such. Equity jurisdiction of the subject-matter of the litigation is conceded. As of August 25, 1922, after other grants and prolonged litigation, the Louisville Railway Company surrendered all its various franchise rights within the city

cially constituted administrative tribunal, or to a political subdivision of the state. Winchester v. Winchester Waterworks, 251 U. S. 192, 40 S. Ct. 123, 64 L. Ed. 221; City of Louisville v. Louisville Ry. Co., 281 F. 353 (C. C. A. 6); 3 Dillon, Municipal Corporations (5th Ed.) § 1325.

The same is true as to the grant of franchise rights to use the public highways of the state for the conduct of such public utility business. This latter power, over the granting of franchises, has been delegated to the cities of Kentucky by section 163 of the Constitution of 1891, and it has been held by the Court of Appeals of Kentucky that, in granting a franchise, it is proper for the city "to provide the conditions under which, and the rates for which, the service should be rendered." Campbellsville v. Taylor County Tel. Co., 229 Ky. 843, 849, 18 S. W.(2d) 305, 308. This, however, is not an exercise of the rate-making powers of the state, nor does it necessarily create a contract bartering away the power of rate control residing in the commonwealth. It fixes a contract maximum; not a contract minimum below which service may not thereafter be required by properly constituted authority. City of Noblesville v. Noblesville Gas & Imp. Co., 157 Ind. 162, 169, 60 N. E. 1032; St. Cloud Pub. Serv. Co. v. City of St. Cloud, 265 U. S. 352, 363, 44 S. Ct. 492, 68 L. Ed. 1050.

This view suggests the rather obvious distinction between the power of rate regulation, as such; the power to contract for a fixed rate over a definite term, which is the equivalent of a surrender of the rate-making power for such term and will be supported only by definite and express enactment (Railroad Commission v. Los Angeles Ry. Corp., 280 U. S. 145, 50 S. Ct. 71, 74 L. Ed. ——, decided Dec. 2, 1929); and the power to fix a maximum rate as a condition to the enjoyment of a franchise. In each instance the municipality acts under delegated state power, although the several powers differ essentially in nature, scope, and effect of exercise thereof. It is the contention of appellant that the city could act only by virtue of its power to impose conditions upon the grant of a franchise, that this action was taken in its proprietary capacity and was solely municipal in character, and that specific delegation of the power of rate regulation must be found in order to give to the rate determination the color of state action.

The fallacy of appellant's position lies in the assumption that the action of the city was in a purely proprietary and municipal capacity, and not under delegation of authority primarily vested in the state. While we have searched the Constitution and laws of the commonwealth of Kentucky and find no express delegation to the city of the power of rate regulation, as such, yet it is conceded that the power to grant or withhold a franchise to use the public ways, and to impose conditions as to such use, has been delegated. This power, no less than the power of rate control, finds its origin in the supreme legislative power of the state. Wright v. Nagle, 101 U. S. 791, 794, 25 L. Ed. 921; California v. Central Pac. R. R. Co., 127 U. S. 1, 40, 8 S. Ct. 1073, 32 L. Ed. 150. The franchise comes from the state through power delegated to the city. Owensboro v. Cumberland Telep. Co., 230 U. S. 58, 65, 67, 33 S. Ct. 988, 57 L. Ed. 1389. Thus, to the extent that the right of subsequent valuation and rate determination is validly reserved as a condition of and concomitant to the granting of a franchise, the city purports to act, and is acting, in the exercise of delegated state power. When, subsequently, this reserved power is exercised, the source and validity of such action must by relation also be found in, and ascribed to, the delegation of state power in the matter of granting the franchise.

The constitutional question frequently presented is whether the subsequent legislation impairs the obligation of an earlier contract; or it may be, as here, whether the complainant is being deprived of its property without due process of law; but in either event a federal question is presented where the legislation complained of is enacted as an adjunct to one or another of the several types of delegated sovereign authority. The fact that the jurisdiction of the federal courts is so seldom questioned in these cases is in itself persuasive of the existence of jurisdiction. It is only when it affirmatively appears upon the record that the city acted in a purely proprietary capacity, and without a delegation of authority from the state, that jurisdiction is held to be lacking. Compare Memphis v. Cumberland Tel. & Tel. Co., 218 U. S. 624, 630, 31 S. Ct. 115, 54 L. Ed. 1185, and cases there cited.

If needed, another justification for the retention of jurisdiction is found in the fact that, upon the present record, the complainant below honestly urges a real and substantial claim of violation of the Federal Constitution. The contention that the city is exercising delegated state powers, either of rate

control or in the enforcement of franchise conditions, is urged in good faith, and this claim is not so wholly lacking in merit as to afford no basis for jurisdiction of the federal courts, whether the contention be ultimately sustained or denied, or whether in fact, the federal question be decided at all. The Fair v. Kohler Die Co., 228 U. S. 22, 25, 33 S. Ct. 410, 57 L. Ed. 716; Greene v. Louisville & I. R. R. Co., 244 U. S. 499, 508, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Louisville & N. R. R. Co. v. Rice, 247 U. S. 201, 203, 38 S. Ct. 429, 62 L. Ed. 1071; Columbus Ry., Power & Light Co. v. Columbus, 249 U. S. 399, 406, 39 S. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648; Davis v. Wallace, 257 U. S. 478, 482, 42 S. Ct. 164, 66 L. Ed. 325; Hart v. Keith Exchange, 262 U. S. 271, 273, 43 S. Ct. 540, 67 L. Ed. 977.

That the claim made is one of substance is further emphasized by the fact, appearing from the adjudicated cases, that the city of Louisville and other municipalities of Kentucky have for many years assumed that they possessed the power of rate regulation. Reliance is placed upon section 2783 of the Kentucky Statutes, applicable to Louisville, providing: "The general council shall have power to pass, for the government of the city, any ordinance not in conflict with the Constitution of the United States, the Constitution of Kentucky and the Statutes thereof." This general provision lacks expression of an intent to delegate that authority which may only be delegated by express provision, and is not to be construed, we think, as including the power of rate control, but only as a delegation of such authority as is ordinarily exercised by municipalities in the conduct of their local affairs. Compare Charleston Consol. Ry. & Lighting Co. v. City Council, 92 S. C. 127, 75 S. E. 390; Charles Simons Sons Co. v. Maryland Tel. & Tel. Co., 99 Md. 141, 57 A. 193, 63 L. R. A. 727; United Fuel & Gas Co. v. Commonwealth, 159 Ky. 34, 37, 166 S. W. 783; St. Louis v. Bell Tel. Co., 96 Mo. 623, 10 S. W. 197, 2 L. R. A. 278, 9 Am. St. Rep. 370; Kalamazoo v. Titus, 208 Mich. 252, 175 N. W. 480.

But it is insisted that this court is bound by the decisions of the court of last resort of Kentucky, construing its Constitution and statutes, and defining the extent of the powers of its municipalities. This may be con-

ceded. It is then said that in at least four instances the Court of Appeals of Kentucky has distinctly found the power of rate regulation to be vested in Kentucky municipalities. The cases relied upon are Gathright v. Byllesby, 154 Ky. 106, 157 S. W. 45; Johnson County Gas Co. v. Stafford, 198 Ky. 208, 248 S. W. 515; Poggel v. Louisville Ry. Co., 225 Ky. 784, 10 S.W.(2d) 305; and Kentucky Cab Co. v. City of Louisville, 230 Ky. 216, 18 S.W.(2d) 992. While there is language in the opinions of these cases seemingly recognizing a power of rate regulation in the city, this issue was directly raised in none, no statutory justification for the exercise of this power is referred to, and in none do the facts warrant an extension of the doctrine of Campbellsville v. Taylor County Tel. Co., supra, that in granting a franchise it is proper to impose conditions. The expressions in these cases must therefore be considered no more than dicta upon the question of the existence of an independent power of rate regulation. We are not inclined to rest our decision upon the finding that the power of rate regulation, per se, has in fact been delegated to the cities of Kentucky, but these dicta, and section 2783, lend color to the substantial and debatable character of the claim that the city acted in the exercise of such delegated state powers. That the case presents a real and substantial question under the Constitution is enough.

It thus becomes unnecessary to decide the strongly-urged question of application of the doctrine of Home Telephone Co. v. Los Angeles, 227 U. S. 278, 288, 33 S. Ct. 312, 315, 57 L. Ed. 510, that, "where a state officer under an assertion of power from the State is doing an act which could only be done upon the predicate that there was such power, the inquiry as to the repugnancy of the act to the Fourteenth Amendment cannot be avoided by insisting that there is a want of power." Doubtless the general council and officers of the city believed the power of rate regulation to have been delegated to the city, and acted upon this belief, but that action might also have been predicated upon the power reserved in the franchise, and not solely upon the delegation of the power of rate control, per se. Upon either view, as we have seen, a federal question is presented.

The judgment of the District Court is affirmed.