James W. CONWAY, and the class he represents, Plaintiff,

v.

The CITY OF KENOSHA, WISCONSIN, et al., Defendants.

No. 75–C–466.

United States District Court, E. D. Wisconsin.

Dec. 2, 1975.

James W. Conway, pro se.

Brigden, Petajan, Linder & Honzik by Roger E. Walsh, Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On August 7, 1975, the plaintiff in this action, employed as city attorney for the defendant city of Kenosha, filed with this court his complaint, affidavit, motion for temporary restraining order, motion for a preliminary injunction, and motion for determination of a class action in this matter. The plaintiff challenges the residency requirement imposed upon civil city employees by the defendants. After receiving the written objections of the defendants to the granting of a temporary restraining order, this court restrained the defendants on August 15, 1975, from terminating the employment of the plaintiff as city attorney for the city of Kenosha by reason of his nonresidency within the county of Kenosha until further order of the court.

The parties have filed briefs and affidavits addressed to the plaintiff's motions for a preliminary injunction and for determination of a class action. For the reasons set forth in this decision, which constitute my findings of fact and conclusions of law, I hold that each of these motions should be denied.

The plaintiff was appointed by the defendant, Wallace E. Burkee, mayor of

the city of Kenosha, to the position of city attorney of that city, was subsequently confirmed by the common council of Kenosha, and commenced performing the duties of that position on December 2, 1974. At the time of his appointment, the plaintiff was aware that a residency requirement for civil service employees had been established by the Kenosha civil service commission. The residency requirement appears in Rule IV(5) of the rules and regulations of the civil service commission and reads:

> "*Residence.* Any applicant must be a citizen of the United States and must also have been a resident of Kenosha County for at least 12 months immediately prior to filling out an application. However, residence requirements may be waived at the discretion of the Director of Personnel when in his opinion the local supply of qualified applicants for the particular class is inadequate. In such case, an employee shall be granted a period of six months to take up permanent residence in Kenosha County. This provision may in specific cases and for cause be waived by the Civil Service Commission at the request of the Director of Personnel."

These rules and regulations were adopted by the common council of the city of Kenosha on October 17, 1960.

The plaintiff was not a resident of Kenosha county at the time of his appointment, nor was he required by the defendants to relocate to Kenosha county at that time. He was, and is now, a resident of the city of Milwaukee, which is located in Milwaukee county. The plaintiff informed the defendant mayor and other city officials involved in the appointment process that he had no intention of immediately relocating to Kenosha county. The parties disagree as to whether he informed city officials at that time that he had no intention of becoming a county resident after six months, and also as to whether he was informed by the defendant mayor that the residency requirement would not be enforced against him in the future. My resolution of the legal issues raised by the plaintiff's motions renders these factual disputes immaterial at this stage of the proceedings.

On May 30, 1975, the plaintiff sent the city administrator, not a defendant in this action, a legal opinion that the city residency requirement was unconstitutional. The defendants were aware of this opinion when they took the subsequent actions described herein. The defendant Mayor directed the plaintiff by means of a letter dated July 10, 1975, "to become a permanent resident of Kenosha County on or before August 15, 1975, or it will be necessary to terminate your employment." Upon the plaintiff's request that the question of the residency requirement be taken before the city finance committee and the common council, each of those bodies voted to maintain the requirement. Those aldermen voting to maintain the requirement are named as defendants in this action.

At the common council meeting, the defendant mayor stated his belief that the common council did not have the authority to grant the plaintiff an exception to the residency requirement. At the same meeting, the defendant, John R. Madison, Jr., stated that he had voted for the confirmation of the plaintiff as city attorney, but that he now felt that he had made a mistake in so voting.

Since the entry of the temporary restraining order by this court on August 15, 1975, the plaintiff has continued to perform his duties as city attorney. However, the institution of this litigation by the plaintiff against the defendant city officials has created impediments to the obtaining of legal advice by the defendant from the city attorney.

## PLAINTIFF'S MOTION FOR CLASS ACTION DETERMINATION

The plaintiff seeks to maintain this action on behalf of himself and "all present and future City employees who live now or will live in the future outside of the County of Kenosha." After stat-

**348**

ing that general definition of the proposed class, the complaint then states:

> "Specifically, the plaintiff brings this action on behalf of the following subclasses in addition to the general class above given: (a) Present and future City employees who are not union members; (b) Present and future City employees who are not required, by their jobs, to frequently be called to unscheduled active duty on short notice; and (c) Present and future City employees who hold professional or management positions of a confidential nature who cannot, by law, be union members."

In his reply brief, the plaintiff provides a third definition: "all employees governed by the Civil Service Rule. This excludes police and fire personnel . . .;" and also a fourth definition: "The class asserted is all employees."

■ "To be maintainable as a class action, a claim must support a preliminary determination that the proposed class is capable of definition. It must also satisfy Rule 23, Federal Rules of Civil Procedure, in that it must fulfill all the requirements of 23(a) and come within one of the subparts of 23(b). *Thomas v. Clarke*, 54 F.R.D. 245, 248 (D.Minn. 1971)." *Kriger v. European Health Spa*, 56 F.R.D. 104, 105 (E.D.Wis.1972).

■ I believe that the plaintiff has failed adequately to define the class he proposes to represent. The defendants have noted the existence of six classes of city employees not subject to civil service pursuant to the ordinance which established the civil service commission, in addition to fire and police employees who are precluded by statute from being subject to civil service. It is also noted that the "specific" sub-classes provided in the complaint are defined in terms such as "frequently . . . called" on "short notice," or "positions of a confidential nature;" these are terms which are inherently nonspecific.

■ Moreover, I do not believe that the proposed class satisfies the requirements of Rule 23(a). An affidavit of the city supervisor of personnel states that the plaintiff was one of only three civil service employees subject to the residency requirement who did not reside in Kenosha county, according to the city's personnel records. The other two individuals had yet to complete their first six months of city employment at the time of the making of the affidavit. Accordingly, it does not appear that "the class is so numerous that joinder of all members is impracticable," at least so far as present employees are concerned. *Neddo v. Housing Authority of City of Milwaukee*, 335 F.Supp. 1397 (E.D.Wis. 1971).

■ It is also not clear that "there are questions of law or fact common to the class," if the class is defined to include union members. In Wisconsin, residency has been held to be a mandatory subject of collective bargaining. *City of Brookfield v. Wisconsin Employment Relations Commission*, Case No. 31923, Wis.Cir.Ct., Waukesha County (June 1974). Where a residency requirement has been agreed to through the collective bargaining process, the situation of union employees covered by such a requirement is completely different from the plaintiff's situation. Questions of law and fact relating to union members would differ considerably from those relating to the plaintiff.

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class," and I do not believe the plaintiff has met this requirement either. Certain issues are unique to the plaintiff's claim, including equitable estoppel and claims for damages and punitive damages. The plaintiff's equal protection challenge to the residency requirement entails the use of either the "rational basis" or the "compelling interest" test. The plaintiff himself suggests that the results of these tests may differ between classes of employees. For example, a residency requirement may be justified as to employees who do emergency work, but not as to others.

■ In my opinion, the plaintiff is also unable to fulfill the requirement of Rule 23(a)(4) that a representative be one who will "fairly and adequately protect the interests of the class." The previous paragraph provides an indication of some possible conflicts of interest between the plaintiff and some members of the proposed class. In addition, the plaintiff's unique position as individual plaintiff, would-be representative plaintiff, and counsel for the class, as well as city attorney for the defendant city, charged by law with conducting the legal business of the city and defending the city and its officers in all litigation would raise conflict of interest problems even greater than those in *Kriger, supra,* where determination of a class action was denied. The plaintiff's attempt to act as both representative and counsel would alone be sufficient to preclude fulfillment of Rule 23(a)(4): "Where a representative party also serves as counsel, or co-counsel, for the purported class, a conflict of interest clearly arises." *Sweet v. Bermingham,* 65 F.R.D. 551, 555 (S.D.N.Y.1975).

Accordingly, the plaintiff's motion for determination of a class action will be denied.

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

The plaintiff has moved for a preliminary injunction enjoining the defendants from enforcing the residency requirement against him during the pendency of this litigation, from altering the status quo of the plaintiff, and from penalizing the plaintiff in any manner for bringing this action.

"[F]our basic elements must be considered prior to the issuance of a temporary restraining order under the provisions of Rule 65(b), Federal Rules of Civil Procedure:

(1) Plaintiffs' showing that without such relief they will be irreparably injured;

(2) The public interest, on balance;

(3) Possible harm to other interested parties; and

(4) Plaintiffs' likelihood of success on the merits of their contentions." *Murphy v. Society of Real Estate Appraisers,* 388 F.Supp. 1046, 1049 (E.D.Wis.1975).

■ I do not believe the plaintiff has demonstrated that if he is not granted a preliminary injunction, he will suffer irreparable harm before a decision on the merits can be rendered. He has demonstrated that he may suffer economic loss if the city is allowed to terminate him. However, there has been no showing of the inadequacy of legal remedies, such as reinstatement with back pay, for any economic loss which might occur, should the plaintiff prevail on the merits. See *Moore v. Kibbee,* 381 F.Supp. 834 (E.D. N.Y.1974). The plaintiff's complaint itself quantifies the damages he alleges he will suffer if the defendants terminate his employment, and there has been no suggestion that the defendants are financially irresponsible. See *Nuclear-Chicago Corp. v. Nuclear Data, Inc.,* 465 F.2d 428 (7th Cir. 1972).

The complaint also alleges damages to the plaintiff's "good name, character, standing and reputation," but on the record before me, this allegation is entirely speculative, as it has not been supported by facts or arguments. Enforcement of a residency requirement against the plaintiff does not, without more, disparage the plaintiff's character or competence as city attorney. Compare *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). The plaintiff notes the statement of Mr. Madison that his vote to confirm the plaintiff's nomination had been a mistake, but such comment is not necessarily to be equated with an attack upon the plaintiff's character or reputation. For the above reasons, I believe the legal remedies available to the plaintiff have not been demonstrated to be inadequate, and therefore find that the plaintiff's motion for a preliminary injunction should be denied.

Even if I were to determine that the plaintiff had demonstrated the existence of irreparable harm required for issuance

of a preliminary injunction, I would deny the instant motion on the ground that the plaintiff has not made a showing of the reasonable probability of success on the merits which is also required by Rule 65(b).

The plaintiff bases his equal protection challenge to the defendants' residency requirement primarily upon *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and subsequent cases invalidating *durational* residency requirements imposed upon recipients of various public benefits. The Court in *Shapiro* required the state to justify its residency requirement under a compelling interest standard, after holding that the clause infringed upon a fundamental constitutional right to interstate travel and was not supported by any compelling state interest.

The plaintiff has not persuaded me that the residency requirement here, unlike a durational residency requirement, infringes upon the right to interstate travel. See *Detroit Police Officer's Association v. City of Detroit*, 385 Mich. 519, 190 N.W.2d 97 (1971), appeal dismissed for want of a substantial federal question, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972); *Ahern v. Murphy*, 457 F.2d 363 (7th Cir. 1972); *Wright v. City of Jackson*, 506 F.2d 900 (5th Cir. 1975).

Also, I believe that the residency requirement need be justified by the defendants only under the rationality standard. The plaintiff has not shown a reasonable probability of succeeding on the merits of his equal protection claim when the rationality test is imposed. Indeed, his brief acknowledges, "Numerous cases have upheld territorial residency requirements, but most of these cases have applied the 'rational bases' [sic] rather than the 'compelling interest' test. . . . " The plaintiff has argued that the residency requirement is not justified even under the rationality test, but I am not persuaded at this stage of the litigation that it is likely that the defendant's economic justifications for the requirement will be found to be irrational.

The plaintiff also presents a substantive due process claim, contending that the residency requirement fails to allow a minimum period of 12 months in which to relocate and that "any shorter period of time is arbitrary and unreasonable in today's housing market." He also alleges that the requirement is "unnecessary, arbitrary and unreasonable." I do not believe that these arguments enhance the plaintiff's prospects of success on the merits of this claim since the theory that due process

" . . . authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded. We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." *Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93, 97 (1963).

Another claim is based on an alleged deprivation of liberty and fundamental constitutional rights, grounded essentially on an alleged infringement of the right to interstate travel. My discussion of the inapplicability of *Shapiro v. Thompson* to the instant case leads me to believe that the plaintiff has not shown a reasonable probability of success on the merits of this claim.

A procedural due process claim is also raised in the complaint, bottomed on an alleged failure to provide the plaintiff with a pretermination hearing. With respect to this claim, it appears that the plaintiff was provided with notice of his proposed termination and that the civil service rules and regulations provide for the filing of grievances with the civil service commission regarding terminations. Instead, however, the plaintiff requested that the finance committee and the common council take up the matter, which request was granted. The plaintiff appeared before those bodies and was heard by them. Given this factual situation, I do not believe the plaintiff has demonstrated a reasonable

351

probability of success on the merits of this claim.

■ In paragraphs 19 and 20 of the complaint, the plaintiff alleges that the residency requirement at issue is ultra vires in that it was neither promulgated under authority of state law nor adopted in accordance with the procedures established by state law and city ordinance. Even if this latter charge were correct, the plaintiff would not have a reasonable probability of succeeding on the merits of his additional 14th amendment claims, based upon 42 U.S.C. sections 1983, 1985, and 1986. In *Memphis v. Cumberland Telephone & Telegraph Co.*, 218 U.S. 624, 31 S.Ct. 115, 54 L.Ed. 1185 (1910), the court stated:

> "It appears from an examination of the bill that it is distinctly charged therein that the ordinance was passed without authority of the state, and its attempted passage it is alleged was an abuse of power by the city. . . . The bill, therefore, so far from charging a violation of the 14th Amendment by an authorized action of the state, distinctly and in terms avers that the ordinance was passed without state authority. That such municipal legislation does not lay the foundation of Federal jurisdiction has been repeatedly held in this court. *Hamilton Gaslight & Coke Co. v. Hamilton*, 146 U.S. 258, 36 L.Ed. 963, 13 Sup.Ct.Rep. 90, in which many of the previous cases in this court are cited. In that case Mr. Justice Harlan, speaking for the court, said of an ordinance passed without legislative authority: 'A suit to prevent the enforcement of such an ordinance would not, therefore, be one arising under the Constitution of the United States.'"

See also *Jones v. Oklahoma City*, 78 F.2d 860 (10th Cir. 1935).

The complaint also alleges various other claims, denominated "ultra vires— state issue," "additional due process," "waiver—due process," and "labor law— due process—equal protection." At this stage of the litigation the plaintiff has not persuaded me that he has a reasona-ble probability of succeeding on the merits of these claims. Section 66.19, Wisconsin Statutes, provides for the establishment of civil service systems. Sections 62.11(5) and 66.01, Wisconsin Statutes, grant Wisconsin municipalities general powers which are sufficiently broad to cover employee residency requirements.

■ The record before me shows that the instant residency requirement was adopted by the common council of the city of Kenosha, and the plaintiff's procedural due process claim relating to its promulgation is unconvincing. The plaintiff's estoppel claim is undercut by his ultra vires claim, since under Wisconsin law a city may not be estopped by the ultra vires acts of its officials. *Town of Humboldt v. Schoen*, 168 Wis. 414, 170 N.W. 250 (1919). With respect to the plaintiff's challenge to the provision in the regulation for waiving the residency requirement, even if I were to find the waiver provision void for vagueness, I believe the remainder of the regulation could be upheld. In addition, the record does not demonstrate that the plaintiff has standing to challenge the waiver provision, as he did not request that an application for waiver be made to the civil service commission. See *Black Coalition v. Portland School District*, 484 F.2d 1040 (9th Cir. 1973). The "labor law" claim is unpersuasive for the reasons outlined in my discussion of the factual and legal differences between the situation of union members and others in the proposed class.

■ Thus, I conclude that the plaintiff has not demonstrated a reasonable probability of success on the merits of any of the claims alleged in his complaint, and I believe that his motion for a preliminary injunction should be denied.

My disposition of this motion moots the defendant's recently filed motion to vacate the temporary restraining order which I previously entered in this action.

Therefore, IT IS ORDERED that the plaintiff's motion for the determination of a class action be and hereby is denied.

352

IT IS ALSO ORDERED that the plaintiff's motion for a preliminary injunction be and hereby is denied.

IT IS FURTHER ORDERED that the temporary restraining order entered in this action on August 15, 1975, be and hereby is vacated.