## SULLIVAN *v.* CITY OF SHREVEPORT.

### ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 89.  Submitted November 17, 1919.—Decided December 15, 1919.

The enforcement of a city ordinance requiring each street car to be operated by a motor-man and a conductor, as against a company seeking to substitute, at less cost, cars run each by one man with the aid of automatic safety and other operating devices, cannot be declared an arbitrary and unreasonable exercise of police power in the absence of a clear demonstration that the substitutes, thus operated, would prove as safe and convenient for the public as cars operated by two men.  P. 171.

142 Louisiana, 573, affirmed.

THE case is stated in the opinion.

*Mr. E. H. Randolph,* for plaintiff in error, contended, in part, that, inasmuch as the court below found the new car, operated by one man only, quite as safe as the car in use when the ordinance was passed, when operated by two, the imposition of the cost of a second man on the new car, upon the ground that, in the opinion of the city council, even more safety and convenience would result, was nothing less than a burden on the business of the company taking its property without due process. When the ordinance was passed the city council had no knowledge of such improvements and of course no intention to apply the ordinance to them. And the council does not require now that the new cars be substituted for the old, but permits the operation of either kind, provided two men are employed on each.

*Mr. James E. Smitherman* for defendant in error.  *Mr. B. F. Roberts* and *Mr. John F. Phillips* were on the brief.

Mr. Justice Clarke delivered the opinion of the court.

In 1907 the City of Shreveport, Louisiana, passed an ordinance requiring that each street car used in its streets should be operated during designated hours by two persons, a conductor and a motor-man, and providing penalties for its violation.

The company with street railway lines in the city complied with the requirement until in June, 1917, when it procured some cars equipped for operation by one man, and attempted to use them on its "Allendale Line," with only a motor-man in charge. Thereupon the plaintiff in error, hereinafter designated the defendant, who was superintendent of the railway company, was arrested for violation of the ordinance.

He defended by filing a motion to quash the affidavit for arrest, on the ground that the ordinance was unreasonable and arbitrary and that the enforcement of it would deprive the company of its property without due process of law and without compensation, in violation of the Fourteenth Amendment to the Constitution of the United States.

The motion to quash was "referred to the merits," a full trial was had, the motion was overruled and the defendant, found guilty, was sentenced to pay a fine. The judgment of the Supreme Court of Louisiana affirming this judgment is before us for review on writ of error.

The defense introduced evidence tending to show that the new type of car used was so equipped that it could be operated by one motor-man with safety to the public as great as was secured by cars theretofore used when operated by two men. The car, designated in the record as "a one-man car," is described as so arranged that passengers enter and leave it only at the front end, where the motor-man is placed. It is so equipped electrically that the motor-man must remain in an assigned

position necessary for the discharge of his duties and must perform "some conscious act" at all times when the car is in motion. If he fails in this "conscious act" the current is automatically cut off, the brakes are applied in emergency, the rail is sanded and the door of the car is unlocked, and is so adjusted that opening it lowers the step for use. There is testimony tending to show economy in the use of such cars, not only in the saving of the wages of one man but also in immunity from accident.

It is apparent from this description derived from the record that it presents for decision the question: Whether the ordinance of 1907, confessedly a valid exercise of the police power when it was passed, was rendered arbitrary and invalid by the development of a car which it is claimed can be operated by one man with as much safety to the traveling public as, and with less cost than, was secured by the two-man car, in use at the time the ordinance was passed and which was contemplated by it.

It is not necessary to decide in this case whether a valid regulating ordinance can be rendered invalid by a change of conditions which render it arbitrary and confiscatory (*Lincoln Gas Co.* v. *Lincoln*, 250 U. S. 256, 269; *Minnesota Rate Cases*, 230 U. S. 352, 473; *Johnson* v. *Gearlds*, 234 U. S. 422, 426; *Perrin* v. *United States*, 232 U. S. 478, 481; *Municipal Gas Co.* v. *Public Service Commission*, 225 N. Y. 89, 95, 97, and *Castle* v. *Mason*, 91 Ohio St. 296, 303), for the claim that such a change of condition had arisen in the case is stoutly disputed by the city authorities.

While on the record before us it might be plausibly contended that when all the appliances on the "one-man car" work as it was intended they should, it could be operated with a high degree of safety in streets where the traffic is not heavy, yet there is evidence that in the short period of the operation of such cars in Shreveport,

the brakes on one of them failed to operate on a descending
grade, resulting in the car getting out of control under
conditions, which, except for good fortune, might have
resulted in serious accident.  A passenger testified to
receiving slight injuries when entering a car due to the
premature closing of the door, and he attributed the
accident to the presence of other persons between him
and the motor-man whose duty it was to close the door.
It was in evidence that the line on which these cars were
placed, while in general one of light travel, extended
into the principal business section of a city of 40,000
inhabitants; that it had at least one steep grade in it,
and that at times the travel was heavy and the cars
crowded.

It is obvious, and not disputed, that such cars are better
adapted to light than to heavy travel, for all passengers
must enter and leave at one door, and one man must take
fares, make change, issue transfers, answer questions and
also remain in position to start the car promptly.  So
occupied and placed, plainly this one man could not
render such assistance as is often necessary to infirm or
crippled or very young passengers, or to those encumbered
with baggage or bundles, and it would not be difficult to
suggest emergencies of storm or accident in which a second
man might be of first importance to the safety and com-
fort of passengers.

These "one-man cars" at the time of trial were, as yet,
experimental, and enough has been said to show that in
each community the operation of street cars presents such
special problems,—due to the extent and character of the
travel, to grades and other conditions,—that with peculiar
appropriateness they have been committed by the law
primarily to the disposition of the local authorities, whose
determination will not be disturbed by the courts, except
in cases in which the power has been exercised in a manner
clearly arbitrary and oppressive.  The rule is, "that every

intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety, and that it is not the province of the courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community." *Dobbins* v. *Los Angeles*, 195 U. S. 223, 235. Since the record, as we have thus discussed it, fails to show a clear case of arbitrary conduct on the part of the local authorities, the judgment of the Supreme Court of Louisiana is

*Affirmed.*