Johnson, J.
The court of appeals was of opinion that the trial court erred in admitting in *165 evidence the two city ordinances. They were held to be invalid on two grounds, first, that they establish a new and higher degree of care than is required by the common law; and, second, that they are indefinite, uncertain and incapable of definition.
It is contended that the rule provided by the ordinances is a new and different one than is established by the general law of the land, and is a violation of Section 3, Article XVIII of the Constitution, which provides that municipalities shall have authority to exercise all powers of local self-gov-, ernment and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws. It is insisted that the great body of the common law, much of which has not been codified, is as much a part of the general law of the land as that part which has been codified. As to this, it must be said that there is no guaranteed right in the rules of the common law as guides of conduct and they may be added to or repealed by legislative authority. This was held in Mondou v. New York, New Haven & Hartford Rd. Co., 223 U. S., 1, where it is said, at page 50: “The law itself, as a rule of conduct, may be changed at the will * * * of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances.”
This principle has also been recently declared in New York Central Rd. Co. v. White, 243 U. S., *166 188, and Arizona Employers' Liability Cases, 250 U. S., 400. But it is claimed that by the provisions of Section 3, Article XVIII of the Constitution, the municipalities have no power to adopt and enforce within their limits any police regulations which are in conflict with general laws, and that the term “general laws” there used includes the common law. This is a novel suggestion with reference to that section of the constitution. The frequency with which new and different views concerning that section are presented is impressive evidence of its importance in our governmental structure, sufficient to invoke the patient effort of the bench and bar of the state to the end that a full and correct exposition of it may be had in the interest of good government.
The history of the adoption of this amendment and the cases in which it has been considered are recent and familiar. We think it clear that the words “general laws” in that section do not refer to rules of the common law, but to laws passed by the general assembly. The terms “general laws” and “laws,” as used in other parts of the same article of the constitution, obviously refer to statutes. Section 2, Article XVIII, provides that general laws shall be passed to provide for the incorporation and government of cities and villages, and this view of its meaning has been the one constantly entertained by this court. Fitzgerald et al. v. City of Cleveland, 88 Ohio St., 338; Billings v. Cleveland Ry. Co., 92 Ohio St., 478; City of Fremont v. Keating, 96 Ohio St., 468; Welch v. *167 City of Cleveland, 97 Ohio St., 311; State, ex rel. Lentz et al., Civil Service Commission, v. Edwards, 90 Ohio St., 305; Greenberg v. City of Cleveland, 98 Ohio St., 282.
In Billings v. Railway, supra, it is said at page 484: “It was contemplated by the framers of the amendment to the constitution that the provisions in a charter, adopted by a city, would differ from the general laws of the state, within the limits defined by the constitution.”
In Fitzgerald v. Cleveland, supra, it is said, at page 359: “The general laws referred to are obviously such as relate to police, sanitary and other similar regulations, and which apply uniformly throughout the state.”
In Fremont v. Keating, supra, an ordinance of the city which regulated the speed of automobiles was sustained as a valid enactment, and Section 6307, General Code, which provides that local authority shall not regulate the speed of motor vehicles by ordinance, was held to be unconstitutional because it deprived the municipality of the right conferred upon it by Section 3, Article XVIII of the Constitution.
In Greenberg v. Cleveland, supra, where the validity of a police regulation is involved, it is said, at page 286: “This ordinance is an exercise of the local police power. Section 3, Article XVIII of the Constitution, clearly contemplates that both the state and the municipalities of the state may exercise the same police power; the only limitation being that the exercise of that power by a *168 municipality shall not conflict with the general laws of the state. There is no statute of this state making it an offense to attempt to steal and take from the person of another anything of value, * * * . That being true, of course this ordinance does not conflict with the general laws of the state, and, if there were a statute creating the same offense, it could not be exclusive, even if the general assembly of Ohio in express terms prohibited the municipality from legislating upon the same subject-matter.”
It must be remembered that the ordinances in question here are police regulations. No argument is needed to show the wisdom of ordinances on the subject of the operation'of street cars in the streets of large cities. The large number of accidents which result from such operation, and which are within the common knowledge, is sufficient to impress upon the legislative authority of the municipality the necessity of local police regulations in the interest of the public safety. The object of the constitutional amendment was to confer that power upon the municipality, but in the interest of uniformity and harmony the same section provides that these local police regulations made by the municipal authority shall not conflict with the general police regulations passed by the general assembly. The manifest object of the amendment was to commit to the people of the different municipalities of the state the control of their local affairs. As was said by the federal supreme court in the very recent case of’ Sullivan v. Shreveport, 251 *169 U. S., 169, decided in December, 1919: “Enough has been said to show that in each community the operation of street cars presents such special problems, —■ due to the extent and character of the travel, to grades and other conditions, — that with peculiar appropriateness they have been committed by the law primarily to the disposition of the local authorities, whose determination will not be disturbed by the courts, except in cases in which the power has been exercised in a manner clearly arbitrary and oppressive. The rule is, ‘that every intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety, and that it is not the province of the courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community.’ ”
It was held in Froelich v. City of Cleveland, 99 Ohio St., 376, in the syllabus: “The state, and municipalities may make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community. But neither the state nor a municipality may make any regulations which are unreasonable. The means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial ■relation to their purpose, and must not interfere with private rights beyond the necessities of the situation.”
*170 It is also contended that this ordinance is indefinite and uncertain. It is said that the words “All possible care and vigilance” and the provision requiring that the “car shall be under the complete control of the person operating the same” are too general and uncertain. But a statute or an ordinance which has a real and substantial relation to the public safety, and which must, in the nature of things, apply to varying and complicated situations, must be clothed in language more or less general. It has long been the rule that a common carrier owes to a passenger in its vehicle the highest degree of care. As stated in 6 Cyc., 592: “Or, in general, the highest degree of human care, prudence, and foresight. In some cases it is said that extraordinary care and caution are required. In other cases the requirement is to do all that human sagacity and foresight can do under the circumstances, in view of the character and mode of conveyance adopted.”
In 4 Ruling Case Law, 1082, it is said: “A contract of carriage imports, in effect, that the carrier, in consideration of the payment of the fare demanded, will use all possible care and diligence in transporting and delivering the passenger safely and promptly at the place of destination.” Many cases are cited under this proposition. The subject is extensively discussed in State v. Schaeffer, 96 Ohio St., 215, where it is held that Section 12603, General Code, prohibiting the operation of a motor vehicle at a speed that is greater than is reasonable or proper, having regard for width, *171 traffic, use and the general and usual rules of such road or highway, or so as to endanger the property, life or limb of any person, is a valid statute. Substantially the same attack was made in that case against the validity of the statute' on account of indefiniteness and uncertainty as is made here, and it must be noted that the charge in that case was a criminal charge.
In Neave Building Co. v. Roudebush, Admr., 96 Ohio St., 40, an ordinance of the city of Cincinnati requiring owners of buildings to equip the windows above the second story with a suitable device, which would permit the cleaning of the exterior of such windows without endangering life and limb, was enforced.
Section 12593, General Code, provides that employers shall be fined if they provide unsuitable and improper scaffolding, hoists, stays, ladders, or other mechanical contrivances which will not give proper protection to the life or limb of a person so employed. This statute was enforced by the United States courts of this district, McWeeny v. Standard Boiler & Plate Co., 210 Fed. Rep., 507, which case was later affirmed by the United States court of appeals.
As to the ordinances in question here it must be said that their purpose is perfectly clear. No motorman or conductor can read either of the ordinances without a perfectly clear understanding of what is expected of him. The company which employs him is entitled to go to the jury and prove every one of the things done by him at the time *172 of the injury complained of. It is permitted to show that he exercised every possible care and vigilance under the circumstances of the case. Possible care and vigilance is simply such care and vigilance as the circumstances of the particular case make possible, and there is no injustice in imposing upon the company operating cars around a curve, or in approaching another car, the duty to do so with the greatest care and to have the car under complete control. So far as evidence and proof are concerned it would be just as difficult to show what would be ordinary care under the circumstances as to show what would be all possible care and vigilance under the circumstances.
For these reasons the judgment of the court of appeals will be reversed and that of the court of common pleas will be affirmed.

Judgment reversed.

Nichols, C. J., Jones, Matthias, Wanamaker, Robinson and Merrell, JJ., concur.