CITY OF DAYTON, OHIO, v. CITY RY. CO.

(Circuit Court of Appeals, Sixth Circuit. December 9, 1926.)

No. 4630.

1. **Constitutional law ⬅278(3)—Rights of street railway to operate under ordinance held prima facie property rights, protected by due process clause (Const. Amend. 14).**

Right of street railway to operate under valid city ordinance, accepted by it and authorizing it to use one-man cars, and right to use its assets in earning return unburdened by expense of operating two-man cars, *held* prima facie property rights, protected by due process clause of the Fourteenth Amendment.

2. **Constitutional law ⬅133—Street railway's acceptance of ordinance authorizing one-man cars and heavy expenditures thereunder held to indicate prima facie existence of contract protected against impairment (Const. art. I, § 10).**

Street railway's acceptance of ordinance authorizing it to operate one-man cars, involving large expenditures in readjusting its operations, *held* to indicate prima facie existence of contract under Ohio rule, within protection of Const. art. 1, § 10, prohibiting impairment of contracts.

3. **Constitutional law ⬅117, 253—City ordinance, otherwise invalid, as impairing contracts or violating due process, may be valid exercise of reserved police powers.**

City has right to pass valid ordinance within its reserved police powers, which otherwise would be violative of contract rights or due process.

4. **Street railroads ⬅72—Whether ordinance requiring street cars to be operated by two men is reasonable depends on facts.**

Whether ordinance requiring street cars to be operated by conductor and motorman is reasonably adapted to protect public safety, or is arbitrary, depends on facts of each case.

5. **Courts ⬅282(2, 3)—Federal court has jurisdiction of case involving good-faith claims of denial of due process and impairing of obligation of contract (Const. art. I. § 10, and Amend. 14).**

Federal court has jurisdiction of case involving good-faith claims that enforcement of city ordinance violates due process clause of Fourteenth Amendment of the Constitution, and impairs obligations of contract under article 1, § 10.

6. **Injunction ⬅85(2)—Equity has jurisdiction of suit to enjoin enforcement of city ordinance providing vast accumulating penalties and resulting in interruption to business.**

Equity has jurisdiction of suit to enjoin city ordinance requiring street railway to operate cars with two men, and providing for vast accumulating penalties and interruption to business.

**7. Courts ⬅263—Federal court may base its decision on nonfederal grounds, and leave federal questions, on which its jurisdiction was invoked, undecided.**

When jurisdiction of federal court is invoked on federal grounds, court may consider all contentions involved, and may decide case on nonfederal questions, leaving federal questions undecided.

**8. Courts ⬅282(1)—Mere invalidity of state law or city ordinance, due to defective adoption, and not lack of power, does not defeat federal court's jurisdiction; "law of the state" (Const. art. 1, § 10, and Amend. 14).**

Mere invalidity of state law or of city ordinance, resulting from defective adoption, and not from lack of power, does not defeat federal court's jurisdiction to enjoin enforcement of. ordinance for violating obligations of contract and due process clauses of Const. art. 1, § 10, and Amend. 14; ordinance being "law of the state" for this purpose.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Law of the State.]

**9. Municipal corporations ⬅108—Charter authorizing referendum ordinances on petition of 10 per cent. of "registered voters," and further petition of 15 per cent. of "electors," held to require signatures of 25 per cent. of registered voters.**

City charter, authorizing referendum ordinances initiated on petition signed by 10 per cent. of "registered voters" and further petition by "15 per cent. of the electors," held to require 25 per cent. of registered voters to sign petitions, as against contention that additional 15 per cent. could be measured by number voting at some previous election; "electors" being broader term than "registered voters."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Elector; Second Series, Registered Voter.]

**10. Municipal corporations ⬅108—Charter provision, authorizing referendum ordinances initiated by petitions signed by 25 per cent. of registered voters, is jurisdictional.**

City charter provision, authorizing adoption of ordinances by referendum initiated by petitions signed by 25 per cent. of registered voters, is jurisdictional, and election on petitions signed by less than such percentage is invalid.

**11. Municipal corporations ⬅108—Method of testing sufficiency of petitions for referendum elections provided by Constitution and general laws held inapplicable to city of Dayton, Ohio.**

Method of testing sufficiency of petitions for referendum elections prescribed by Constitution of Ohio respecting state-wide initiated laws, and by general municipal incorporation law providing for initiative and referendum ordinances in cities organized under that general law, held not applicable to city of Dayton, organized under home rule charter.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Suit by the City Railway Company against the City of Dayton, Ohio. Decree for plaintiff, and defendant appeals. Affirmed.

J. B. Harshman and Guy H. Wells, both of Dayton, Ohio, for appellant.

J. Sprigg McMahon, of Dayton, Ohio (McMahon, Corwin, Landis & Markham, of Dayton, Ohio, on the brief), for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. This is an appeal from a final decree enjoining the enforcement of a Dayton city ordinance, which, in effect, prohibited the use by the street railways of the so-called "one-man" cars. Pursuant to city ordinances, which by their acceptance had, under the Ohio rule, become contracts (Columbus Co. v. Columbus, 249 U. S. 399, 39 S. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648), the street railways in Dayton had for many years provided, upon each car, a conductor and a motorman. About April, 1921, in an effort to lessen the then greatly increased cost of operation, there had come into considerable use a form of car intended to be operated and managed by a motorman only, and provided with certain safety devices, whereby they became known as "one-man cars," or "safety cars." The city of Dayton had, before then, substituted a city commission and a city manager for the council and mayor of its older governmental form. The commission determined that the use of these "one-man cars" on the city street railways would be advisable, and on December 14, 1921, an ordinance was passed permitting their operation, if of an approved type, under regulations therein prescribed. The street railways at a large expense either purchased new cars of this type, or remodeled their old ones so as to comply with the ordinance provisions, and since that time cars of this type have been in use. The saving in the expense of operation on the different lines in the city has been a very large amount.

In 1923, an agitation for the repeal of this 1921 ordinance arose. It was promoted, if not instigated, by the representatives of organized labor. They applied to the city commission, the regular municipal legislative body, for the passage of a repealing ordinance. The commission adhered to its former conclusion, and refused to interfere with the existing situation. By the so-called "home rule charter" of Dayton, adopted in 1913, it was provided that city ordinances might be initiated upon petition, and adopted upon the referendum election which it was the

duty of the commission to call. This course was followed; and at the election of November 6, 1923, the majority of the votes cast favored the proposed ordinance, which expressly repealed that of 1921, provided that there must be a conductor as well as a motorman upon every car, and fixed for the company and motorman a fine of $35 for each day for each car operated with one man only.

The appellee filed its bill in the court below, representing that it was one of the street railway companies affected by both ordinances, and asking an injunction against the enforcement of the later one, because its effect was to take plaintiff's property without due process of law, and to deny to plaintiff the equal protection of the laws, in violation of the Fourteenth Amendment. By change later permitted, the bill also alleged that the ordinance, if now enforced, would impair the obligation of the contract created by the ordinance of 1921 and its acceptance, such impairment being said to be in violation of section 10 of article 1 of the Constitution.

[1, 2] The claims of contract impairment and of taking property without due process present different aspects of the same question. The rights of plaintiff to continue to operate under the 1921 ordinance, if still valid, and to use its assets in the earning of a return unburdened by the expense created by the new ordinance, are prima facie property rights, such that, if they are taken away without due process, the Fourteenth Amendment is violated. Great Northern v. Minnesota, 238 U. S. 340, 345, 35 S. Ct. 753, 59 L. Ed. 1337. So, also, the ordinance of 1921 and its acceptance by the company, involving the expenditure of large amounts of money in meeting the conditions of the ordinance and readjusting its operations upon a new basis, indicate prima facie the existence of a contract under the Ohio rule above stated, however it might be in many other states. Cleveland v. Cleveland Ry., 194 U. S. 517, 24 S. Ct. 756, 48 L. Ed. 1102.

[3] However, the city plainly has the right to pass an ordinance which would otherwise be a violation of a contract, or a taking of property without due process, provided that such ordinance is the valid exercise of those police powers which are expressly or impliedly reserved in the passage of any ordinance of a contract color, or which always by their underlying existence justify some interference with the otherwise free use of property. Dobbins v. Los Angeles, 195 U. S. 223, 25 S. Ct. 18, 49 L. Ed. 169; Hadacheck v. Los Angeles, 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927; N. W.

Ry. Co. v. Commission, 265 U. S. 74, 44 S. Ct. 439, 68 L. Ed. 904.

[4] Thus the sole question, upon this branch of the case, is whether the ordinance of 1923 was a valid exercise of police power; and since no claim is made that any police power is involved, save that concerning the public safety, the specific inquiry is whether the ordinance of 1923 may be considered as reasonably adapted to promote the safety of the public in Dayton. Upon this subject the opinion of the Supreme Court in Sullivan v. Shreveport, 251 U. S. 169, 40 S. Ct. 102, 64 L. Ed. 205, teaches that it depends upon the facts of each case whether the adoption of such an ordinance can be said to be, upon the one hand, arbitrary, or, on the other, to be within the limits of the legislative power on the subject.

The present case has some unique features. Legislative action of the type which has been sustained as a reasonable exercise of police power, has been, at least in theory, taken by a deliberative, legislative body, which considered and decided, in a reasoning way, the two sides of the question, and whose judgment was always entitled to a great respect, and often to complete acceptance, from the judicial branch. The exercise of such legislative power by the electorate, after the chosen legislative body of a city had decided the question the other way, has, so far as we know, never been considered from this aspect by any court.

It must be noted that the question as to the safety of these one-man cars is not an absolute one. To show merely that there had been accidents and injuries in their use is only to cover part of the question. There is necessarily involved a comparison between the two-men type and the one-man type, because accidents with either are practically inevitable. The criterion must be whether there was reasonable ground to conclude that the cars forbidden by the new ordinance were substantially more dangerous to the public than the old cars, a return to which was directed.

[5, 6] We thus find that the bill presents a claim of right under the Fourteenth Amendment, and a claim of right under section 10, article 1, not only in good faith, but upon such foundations of fact and of argument that they are entitled at least to serious consideration and study. Upon the question of jurisdiction of the federal court nothing more is necessary. Siler v. Louisville & N. R. Co., 213 U. S. 175, 191, 29 S. Ct. 451, 53 L. Ed. 753. The equity jurisdiction, because of the vast accumulating penalties and the inter-

ruption to business, is equally clear.[1]  Terrace v. Thompson, 263 U. S. 197, 214, 44 S. Ct. 15, 68 L. Ed. 255.

[7] It is the familiar rule that, when the jurisdiction of the federal trial court is thus properly invoked upon a federal ground, the court may consider all the contentions involved, and may decide the case upon a nonfederal question, leaving the others undecided; and, in view of the gravity of constitutional questions, the courts are in such cases inclined to take this latter course.  Siler Case, supra, at pages 191, 193 (29 S. Ct. 451).

This case presents, not only the questions which have been specified, but also the claim that the ordinance of 1923 was not passed in the manner required by the Dayton city charter, and hence is invalid for that reason. The specific objection is that the first initiated petition, presented to the commission and asking it to pass the ordinance, was signed by less than the required 10 per cent. of the registered voters, and that the second petition thereafter presented to the commission, to compel the calling of an election upon the initiated ordinance, was signed by less than the required additional 15 per cent. of the registered voters.

[8] As a bar to this objection, defendant urges that both constitutional provisions have reference in effect only to a "law of the state," and that, while an otherwise valid municipal ordinance is for this purpose a law of the state, an ordinance which, as a matter of state jurisprudence, is invalid, is not such a "law."  The cases cited in the note lend the color of support to this contention;[2] but the contention goes too far; if valid, it would deny jurisdiction in all cases of this class.  A

by a state law cannot be regarded as the act of the state, and that hence no federal question is involved, it must be regarded as overruled by Home Telephone Co. v. Los Angeles, 227 U. S. 278, 294, 33 S. Ct. 312, 57 L. Ed. 510. In each of these three cases involving city ordinances or proceedings in the nature of an ordinance—the Hamilton, Savannah, and Louisville Cases—it expressly appeared that there had been no delegation from the state to the city of the state's legislative power in the subject-matter, and it is apparent that in reaching the conclusion that the city ordinance without this basis was not a law of the state, emphasis was placed upon the words "of the state" and not upon "law." To rest these decisions upon the thought that the ordinance was not a valid law for some fundamental reason would make them inconsistent with the Home Telephone Case; to rest them upon the thought that the law did not even purport to be one made by or under color of the state legislative power is consistent with the principals and the decisions. A city ordinance only becomes a law of the state because and when the state legislative power has been delegated to the city; if there has been such delegation, the ordinance is a law "of the state," whether it is valid or invalid; if no delegation, then the state is not responsible for it.

In Savannah v. Holst (C. C. A. 5) 132 F. 901, this distinction was not observed, and it was held that an ordinance invalid apparently only because of informality in its passage was not a law of the state; but it seems that the bill did not present any question arising under the Constitution of the United States, and was rested wholly upon the claim that the ordinance was invalid as a matter of state law. The decisions of the Ninth Circuit Court of Appeals in Seattle Co. v. Seattle, 185 F. 365, and San Francisco v. United R. R., 190 F. 507, would doubtless be substantially revised in view of the Home Telephone Case. In Shanks v. Banting Co. (D. C.) 9 F.(2d) 116, there is a discussion by Judge Killits of the Barney and Home Telephone Cases, and other authorities, and it is pointed out that the basis of jurisdiction in each case is important; and it is to be noted that in the present case full jurisdiction existed, even if the ordinance were in all respects regularly initiated and passed. The jurisdiction existed regardless of the validity or invalidity of the ordinance under state rules. In the Hamilton, Savannah, and Louisville Cases, the claimed federal jurisdiction was planted solely on the theory that the ordinance was unauthorized under state laws.

In the following cases, among others, in which the sole ground of federal jurisdiction has been that the action of the state violated the Fourteenth Amendment, the decision has been rested on an ascertained violation of state law: Field v. Barber Co., 194 U. S. 618, 620, 24 S. Ct. 784, 48 L. Ed. 1142; Siler v. Louisville Co., 213 U. S. 175, 192, 29 S. Ct. 451, 53 L. Ed. 753; Greene v. Louisville Co., 244 U. S. 499, 508, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Lincoln Co. v. Lincoln, 250 U. S. 256, 264, 39 S. Ct. 454, 63 L. Ed. 968 (the validity of an ordinance "upon grounds of state law," page 265 [39 S. Ct. 457]); Davis v. Wallace, 257 U. S. 478, 482, 42 S. Ct. 164, 66 L. Ed. 325.

---

[1] The answer alleges that there had been an agreement that the city would make one arrest and thus one test case, and hence that there was no danger of multiplicity of suits. Not only does the proof fail to show this agreement but it is doubtful whether such an agreement could be enforced as against a change of mind and, in the form alleged, it does not purport to cover or protect from the constantly accruing penalties.

[2] The leading case is Barney v. New York, 193 U. S. 430, 24 S. Ct. 502, 48 L. Ed. 737. With express reference to a city ordinance, it had been preceded by Hamilton Co. v. Hamilton, 146 U. S. 258, 266, 13 S. Ct. 90, 36 L. Ed. 963, and was later followed by Savannah Railway Co. v. Savannah, 198 U. S. 392, 396, 25 S. Ct. 690, 49 L. Ed. 1097. And see Raymond v. Chicago Union Traction Co., 207 U. S. 20, at page 37, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757. Memphis v. Cumberland Co., 218 U. S. 624, 630, 31 S. Ct. 115, 54 L. Ed. 1185, is to the same effect, and this court expressly followed the Hamilton and Savannah Cases in Louisville v. Cumberland Co. (C. C. A.) 155 F. 725, 729, 12 Ann. Cas. 500. In so far as the Barney Case seems to adopt the broad principle that an act invalid

municipal ordinance in violation of the Constitution of the United States is nothing, because it is no law; such an ordinance in violation of the state Constitution or state statutes cannot be less than nothing; hence the mere fact that a state-wide law may be successfully attacked under the state Constitution, or that a municipal law may be invalid under general state laws, cannot defeat the federal jurisdiction now invoked. Chief Justice White said in Home Telephone Co. v. Los Angeles, 227 U. S. 278, 285, 33 S. Ct. 312, 314 (57 L. Ed. 510) that this contention, if sustained, "would in substance cause the state courts to become the primary source for applying and enforcing the Constitution of the United States in all cases covered by the Fourteenth Amendment."

The true principle of these cited cases, as will be seen by detailed examination,[2] is that, when a municipality has no purported power or color of power to pass an ordinance, one which it does pass does not attain to the dignity of a "law of the state"; but it seems clear that when the power exists, but is only imperfectly executed, so that the ordinance has color of validity, it is for this purpose a "law of the state."

The ordinance now in question purports to be fully authorized by the provisions of the city charter. The Constitution of the state, in its so-called home-rule provisions, in connection with the adoption of the city charter thereunder, undoubtedly operates as a complete delegation to the city of the entire normal legislative power of the state upon this subject-matter. We have no doubt that this ordinance, even if defectively adopted, is a law of the state, within the contemplation of the Fourteenth Amendment, and is action by the state, within the meaning of section 10.

[9] It seems from the record to be a conceded fact that the total number of signatures to both petitions was very far short of 25 per cent. of the registered voters of the city. The claim is made that the charter requirement does not call for this percentage of the "registered voters," and this claim is based on the fact that, while the original 10 per cent. petition is required to be signed by this percentage of registered voters, the further petition is required to be signed by an "additional 15 per cent. of the electors," and it is suggested that this requirement may be measured by the number which had voted at some previous election. It seems to us very clear that, in this association, the "electors" referred to are the registered voters. Not only would it be an anomaly to have a differ-

ent measure of signature qualifications attached to the second petition, which is to be united to the first, but no very satisfactory other means of measuring qualifications is suggested. "Electors" is inherently a broader term than "registered voters," because there may be many qualified electors who have not registered, and who yet may do so; but no one knows how many there are. Lacking any contrary construction by the state courts, we must hold that these petitions, because they do not contain 25 per cent. of the registered voters, were not signed by the minimum number required by the charter.[3]

[10] It is next urged that, since the commission did call the election and the election was held, matters precedent to the calling became mere questions of regularity and were not vital. To us it seems otherwise. The existence of the required minimum basis for this extraordinary exercise of legislative power seems to be so fundamental that in its absence there is nothing for the later structure to stand upon. In a fair sense, it is jurisdictional. We see no lack of analogy with the familiar case where an election is required before the issue of municipal bonds and where, although the election is held and the bonds overwhelmingly voted, they are invalid because the prescribed notices of election were not given. Manhattan v. Ironwood (C. C. A. 6) 74 F. 535, 539. To this effect are the only decisions expressly in point which have been called to our attention. Wright v. McMinnville, 59 Or. 397, 117 P. 298; Provoost v. Cone, 83 Or. 522, 162 P. 1059.

[11] It would doubtless be desirable if there were some preliminary way of raising any such questions, so that the rightfulness of the election could be determined before it was held. Accordingly the Constitution, in providing for state-wide initiated laws, and the general municipal incorporation law of Ohio, in providing for initiative and referendum ordinances in cities organized under that general law, expressly specify that the sufficiency of the petitions may be tested in a certain way, before the election, and, if not so tested, the petition shall conclusively be deemed to be sufficient. However, these provisions are not applicable to the city of Day-

[3] The general municipal law, in similar provisions, defines "electors" as those who voted at the last election; but this law has no application to Dayton. Sections 29 and 169 of the Dayton charter make further reference to registered voters, as best describing those who are then the interested "electors," who are qualified to vote at the desired election.

ton, which is not organized under this general incorporation law, but wholly under its so-called home rule charter. This charter does contain the provisions we have mentioned as to signature, but does not prescribe any method by which the sufficiency of the petitions may be tested. The Constitution and the laws referring to other cities will not supply this lack.[4]

These considerations dictate that the decree of the court below, enjoining enforcement of the ordinance of 1923, must be affirmed.

---

[4] The proposal for the charter said: "If adopted, we will not be compelled to continue under a form of government provided by the General Assembly, * * * which is antiquated, cumbersome, and wholly unsuited," etc. Sections 21–31 cover the subject of these initiated ordinances by provisions plainly intended to be a complete code, and to be in place of the analogous sections in the general law. They provide no means for scrutiny of the petitions or for contest. Since the first petition is submitted to the commission and it is required to act, there may be an implied power in the commission to determine its sufficiency; but as to the second, the 15 per cent. petition, action thereon is under the control of the "committee of the petitioners." Apparently it decides whether it has names enough. Such a decision should not bar judicial inquiry. No provision is found in the charter which by reference brings into it any general provisions of law.