In the Matter of the Application of THIRD AVENUE RAILWAY COMPANY, Petitioner, for Certiorari Orders against LEON G. GODLEY and Another, Constituting the Transit Commission of the State of New York, Being the Metropolitan Division of the Department of Public Service, State of New York, Respondents, to Review the Determination of the Transit Commission in Case No. 2898 Which Is Entitled " Hearing upon Motion of the Commission upon the Regulations, Practices, Equipment, Appliances and Service of Street Surface Railroad Corporations or Common Carriers in the City of New York, with Special Reference to One-Man Operation of Cars," in so Far as Said Determination Relates to the Provisions and Requirements Set Forth in Subdivision Marked IX of the Petition Herein.

First Department, January 10, 1930.

*Alfred T. Davison* of counsel [*Addison B. Scoville* with him on the brief], for the petitioner.

*Frank C. Bowers* of counsel [*George H. Stover*, attorney], for the respondents.

MARTIN, J. The Transit Commission on February 15, 1928, adopted a hearing order upon its own motion directing a hearing to the end that the Commission might determine whether the practices and equipment of street railways with special reference to the operation of one-man cars were safe and adequate and if not, to determine the safe and adequate equipment and service thereafter to be enforced and used. This hearing order was served upon all companies within the jurisdiction of the Commission operating within the city of New York, and the Commission upon the hearings introduced evidence and invited discussion on all phases of operation of one-man cars.

Statistics and data showing the lines and hours of one-man operation on the several railway systems and a list of the cars used in such operation, together with a description of the safety features with which such cars were equipped were admitted in evidence as Commission's exhibits.

At the conclusion of the hearings an order was entered of which the following are the important paragraphs:

"Ordered that all railroad corporations and street railroad corporations and common carriers operating surface cars subject to the jurisdiction of this Commission and every receiver of such corporation shall within thirty (30) days after the receipt of a certified copy of this order file with the Commission sworn statements showing in respect to cars operated by one-man crews: (a) the car numbers of all cars equipped or used for operation by one man; (b) the safety devices with which such cars are equipped; (c) the lines on which one-man car operation is used; (d) the hours of the day on which one-man car operation is used.

"Further Ordered that before any cars other than those shown on the statements directed by the foregoing paragraph shall be used for operation by one-man crews, they shall submit the information directed by the foregoing paragraph and shall obtain the approval of this Commission to such operation.

"Further Ordered that before the hours of operation of cars with one-man crews shall be changed, increased or extended on any line, the said corporations or receivers shall obtain the approval of the Commission therefor.

"Further Ordered that the said corporations and receivers shall equip or cause to be equipped the cars now being operated by one-man crews as set forth in the sworn statements required by the first directory paragraph of this order, with all of the following safety devices or appliances:

"(a) Sliding or folding doors, interlocked with either the controller or airbrake system.

"(b) The so-called 'dead man' feature, which requires the weight of the motorman's hand on the controller handle or holding his foot on the control valve and when either hand or foot is removed from the operating position, cuts off the power and automatically sets the brakes.

"(c) In addition to the regular entrance door, an additional exit available in case of emergency.

"The said corporations or receivers shall equip 25% of all cars now operated by them in one-man operation lacking any or all of the foregoing devices or appliances, within six (6) months from the date of the receipt of a certified copy of this order; an additional 25% within one year, an additional 25% within one year and six (6) months; and the balance within two years."

The power of the Commission to make this order is questioned by the petitioner. The railroad company says that the issue in this proceeding is whether the Transit Commission may under the

claim of regulation, before evidence taken or facts ascertained, make an order which relates solely to the management of the petitioner's railroad, and whether the Transit Commission may, in the first instance and in advance of any particular operation, substitute its judgment for the judgment of the owners of the property in the management of such railroad.

The Transit Commission contends (1) that the right to regulate the running of railway cars is a governmental power vested in the State in its sovereign capacity, (2) that it may be exercised by the State, directly or through a commission appointed by it, or it may delegate such power to municipalities, and (3) that the State, in the exercise of its police power, may forbid entirely the operation of one-man cars. (*City of Schenectady* v. *Schenectady R. Co.*, 118 Misc. 676.)

In New York city the right to regulate has been delegated to the Transit Commission, and this right includes the power to act in respect to " one-man cars."

In *Sullivan* v. *City of Shreveport* (251 U. S. 169) an ordinance requiring that each street car should be operated during designated hours by two persons, a conductor and a motorman, was under consideration. The court held that where such power has been delegated to a municipality, a city ordinance requiring each street car to be operated by a motorman and a conductor, cannot be declared an arbitrary and unreasonable exercise of police power in the absence of a clear demonstration that one-man cars would prove as safe and convenient for the public as cars operated by two men.

The United States Supreme Court has also upheld the reasonableness of a statute requiring a definite type of protection to the public even though since its enactment there had been devised safety features claimed to equal or excel the protection sought by the statute. (*Nashville, Chattanooga & St. Louis Ry.* v. *White*, 278 U. S. 456.)

The petitioner in this case argues that the two provisions of the order under review are not regulatory but that they relate to the management of petitioner's railway. The petitioner fails, however, to distinguish between acts of the State or its agents in the exercise of the police power in the interest of public safety and attempts to concern itself with the financial management and business direction of the railway company.

The contention of the railroad in this proceeding is not only that the Commission arbitrarily and without any valid reason ruled that there could be no more one-man cars on certain lines and that on other lines one-man cars could be operated during certain

hours only, but that the Commission has no power to act in such a case before actual operation of such cars.

The representatives of the railroad companies also say that they were called before the Transit Commission to answer the demand that one-man cars be equipped with certain devices to add to their safety and that they were ready to meet the suggestion that the cars should be equipped with sliding or folding doors, interlocked with either the controller or airbrake system; to install the so-called " dead-man " feature, which requires the weight of the motorman's hand on the controller handle or the holding of his foot on the control valve, the removal of which cuts off the power and automatically sets the brakes, and in addition to the regular entrance door, agreed to provide an additional exit available in case of emergency.

The representatives of the Third Avenue Railway Company say that when they stated to the Commission that they were ready and willing to equip their cars with all these safety devices they were informed that it would not be necessary to take part in any future hearings. They then left and heard nothing further until an order was about to be made, directing that, in addition to equipping the cars with safety devices, no 'more one-man cars should be operated on certain streets without first obtaining permission from the Commission and that one-man cars should be run on certain streets only at certain hours. They say that they were not given a hearing in this matter, that it was not the subject of the controversy before the Commission and that they had no opportunity to answer the contentions of the Transit Commission.

It is apparent that through an oversight the scope of the hearing as outlined by counsel for the Commission was thereafter limited. He said: " This is a hearing called by the Commission for the purpose of developing information concerning the operation of one-man surface cars in the City of New York. Our inquiry will go not only to the safety features of these cars, but also to the convenience or inconvenience of running them on certain lines.

" We have not any particular end in mind in the way of an order, which ought to be made at the conclusion of these hearings. We invite the co-operation of the railroad companies in making suggestions as to the several types of cars and their adaptability to certain conditions, and we especially invite information concerning the results of operating these cars in respect to accidents and safety features.

" It of course is very hard for the Commission to get records of accidents which indicate exactly how the accident happened and

whether it was as a result of one-man operation or not. We need the assistance of the railway companies."

At the close of the hearing Commissioner Lockwood said: " We will set it for 2.30 next Wednesday, and Mr. Davison and these gentlemen representing the companies whose cars are fully equipped, there is no need of them coming at the next time."

Thereafter the only evidence taken on this subject appears to relate solely to the safety of one-man cars.

There appears, however, to be ample authority holding that the Transit Commission after a hearing has power to make the order here under review.

In *Loomis* v. *Lehigh Valley R. R. Co.* (208 N. Y. 312) the court said: " It is the settled law that a common carrier must provide itself with vehicles which are safe and sufficient for the purpose intended."

In *City of Schenectady* v. *Schenectady R. Co.* (*supra*) the court said: " The right to regulate the running of railway cars is a governmental power vested in the State in its sovereign capacity. It may be exercised by the State directly or through a commission appointed by it, or it may delegate such power to municipalities."

In *Sullivan* v. *City of Shreveport* (*supra*) the court, in sustaining an ordinance relating to one-man cars, held: " The enforcement of a city ordinance requiring each street car to be operated by a motorman and a conductor, as against a company seeking to substitute, at less cost, cars run each by one man with the aid of automatic safety and other operating devices, cannot be declared an arbitrary and unreasonable exercise of police power in the absence of a clear demonstration that the substitutes, thus operated, would prove as safe and convenient for the public as cars operated by two men."

The court further said with reference to the use of said cars: " It is obvious, and not disputed, that such cars are better adapted to light than to heavy travel, for all passengers must enter and leave at one door, and one man must take fares, make change, issue transfers, answer questions and also remain in position to start the car promptly. So occupied and placed, plainly this one man could not render such assistance as is often necessary to infirm or crippled or very young passengers, or to those encumbered with baggage or bundles, and it would not be difficult to suggest emergencies of storm or accident in which a second man might be of first importance to the safety and comfort of passengers."

The State may pass a law forbidding the operation of one-man cars and the Transit Commission may make such an order on facts showing that such cars are not as safe, useful, convenient

or capable of accommodating the people, especially where traffic is heavy and when it is shown that one-man cars delay or impede the progress of traffic on certain streets, which is a very important consideration at the present time in the city of New York.

The difficulty here, however, is that the representatives of the railroads, or at least some of them, were not given a hearing and that they were misled by having it intimated to them that the only questions that would be considered were with reference to making the cars safe, and after consenting to make the requested changes, were informed that they might absent themselves from future hearings and would receive notice if their presence was desired.

We think there are very substantial grounds for requiring the limitation in number or the absolute prohibition of the use of one-man cars on some or all streets, especially in view of traffic conditions. This is especially so where these cars have overhead trolley wires requiring a man to look after the trolley pole in case of emergency. The Commission may also take into consideration the fact that in order to rapidly move traffic and properly do so, one-man cars which block traffic may be wholly inadequate.

In *Sullivan* v. *City of Shreveport (supra)* the court, referring to the subject of traffic congestion, said as follows: " It was in evidence that the line on which these cars were placed, while in general one of light travel, extended into the principal business section of a city of 40,000 inhabitants; that it had at least one steep grade in it, and that at times the travel was heavy and the cars crowded."

If, after the Commission has taken testimony on some or all of these propositions, it then reaches the conclusion that one-man cars should not be operated on any line without permission of the Commission or during certain hours only, we think the Commission has authority to make such a ruling which may be reviewed in a proper case.

We do not hold, however, that before the Transit Commission may make a rule or regulation, it must in every instance have a hearing, nor do we hold, as requested by the petitioner, that the Commission cannot rule on the question of one-man cars until the railroad companies place one-man cars in operation. Such an argument may be easily met by showing prior to their installation and use that they would be entirely inadequate for some streets because of the slow and cumbersome operation of such cars, especially where traffic is congested. It may be shown that they not only block traffic but are wholly inadequate to accommodate the people who must travel on such street cars. These are all facts that are ascertainable before the installation of such cars.

If such cars are first installed, it might be argued that the great cost of equipping them with safety devices should have been avoided by a decision of the question before the expenditure of large sums of money, the expenditure of which might be used as an argument for permitting such cars to remain in service.

There appears to be no real difficulty in reaching a proper decision in any instance where the parties are sincerely endeavoring to solve such a problem.

The determination herein was erroneous for two reasons: *First*, because this petitioner was not given a hearing on the subject that has been acted upon by the Commission, and *secondly*, the representative of this company was informed that it would be unnecessary for him to attend further hearings with reference to this matter and was thus unintentionally misled by the Commission.

The determination under review should, therefore, be annulled and the matter remitted to the Transit Commission, with instructions to give a further hearing pursuant to the hearing order herein.

DOWLING, P. J., MERRELL, O'MALLEY and PROSKAUER, JJ., concur.

Determination annulled and the matter remitted to the Transit Commission, with instructions to give a further hearing pursuant to the hearing order.